CALLOWAY, J.
| ¡/The protracted litigation in this case involves mineral rights and royalties associated with a production well, IP Pet. PPCQ No. 1 well, located on a certain tract of land owned by the plaintiffs in Terre-bonne Parish (hereinafter “St. Martin property”). In this appeal, the defendants IP Petroleum Company, Inc. (hereinafter “IP Petroleum”) and International Paper Company challenge a trial court judgment on remand that awarded the plaintiffs, Quality Environmental Processes, Inc. (hereinafter “Quality”), Michael X. St. Martin, and Virginia Rayne St: Martin: (A) $107,612.67 in unpaid mineral royalties; (B) $215,225.34 in statutory penalties pursuant to La. R.S. 31:139; (C) $230,563.83 in interest from October 31, 2002, on the unpaid royalties and penalties; (D) $138,350.46 in statutory attorney’s fees pursuant to La. R.S. 31:139; and (E) $691,752.30 in intentional tort damages. The plaintiffs assert their own appeal of the judgment on remand insofar as the judgment: (F) dismissed their claim for $817,464.29 in mineral royalties. In this appeal, we amend, in part, the judgment of the trial court, and affirm as amended.
In a related appeal, also rendered this date, 2016 CA 0171 consolidated with 2016 CA 0172, the plaintiffs appeal a judgment granting partial summary judgment in favor of the defendant, IP Petroleum, and dismissing with prejudice the plaintiffs’ claims for mineral royalties attributable to production on the IP Pet. PPCO No. 1 well prior to April 1,2001.'
FACTS AND PROCEDURAL HISTORY
The background facts and procedural history of this case are more detailed and fully set forth in the Louisiana Supreme Court’s opinion in Quality Environmental Processes, Inc. v. I.P. Petroleum Co., Inc., 2013-1582 (La. 5/7/14), 144 So.3d 1011 (rehearing denied July 1, 2014) (hereinafter “Quality I”).[2] For efficiency, we discuss only the facts and procedural history relevant to the current appeal.
On June 29, 2000, Quality and the. St. Martins filed a petition for declaratory judgment and- damages' against Energy Development Corporation (hereinafter “EDC”), Phillips Petroleum Corporation (hereinafter “Phillips”), Mobil Exploration & Producing U.S., Inc. (hereinafter “Mobil”), and IP Petroleum.[3] That suit bears *360 trial court docket number 129,412 and was ^assigned to Division D of the 32nd JDC in Terrebonne Parish, presided over by Judge David W. Arceneaux. It is referred to by the parties as the “Blue Line I” litigation. See Quality I, 144 So.3d at 1018. The Blue Line I litigation is the subject of the related appeal before this court, 2016 CA 0171 consolidated with 2016 CA 0172.
In the Blue Line I suit, the plaintiffs alleged they were entitled to receive from the defendants all mineral royalties on production from the IP Pet. PPCO No. 1 well attributable to the St. Martin property from June 29, 1997, through the date the well was plugged and abandoned (September 2002), in the amount of $817,464.29.[4] The trial court later granted the plaintiffs leave to amend their suit to add Noble Energy, Inc. (hereinafter “Noble. Energy”), as the successor to EDC, as a defendant.
At the time the Blue Line I suit was filed, some $817,464.29 in royalties had been paid by IP Petroleum to Noble Energy and Phillips between June 29,1997, and April 1, 2001 (hereinafter “previously-paid royalties”), while the remaining $106,977.66 in royalties (derived from production on the well between April 1, 2001, and September 1, 2002) were placed in escrow by the law firm of Montgomery, Barnett, Brown, Read, Hammond & Mintz, L.L.P. (hereinafter “escrowed royalties”). See Quality I, 144 So.3d at 1018.
Ultimately, Mobil was dismissed from the Blue Line I suit. The plaintiffs settled their claims with Phillips in 2001 and with Noble Energy in 2005, who were also dismissed from the suit. See Quality I, 144 So.3d at 1018. In the 2001 and 2005 settlement agreements with Phillips and Noble Energy, the plaintiffs obtained all of the mineral interests in the St. Martin property that had belonged to Phillips and Noble Energy, respectively. See Quality I, 144 So.3d at 1018. IP Petroleum is the sole remaining defendant in the Blue Line I suit.[5]
In 2006, the plaintiffs attempted to amend their petition to add as a defendant International Paper Company (the parent company of IP Petroleum) and to assert a claim for tortious conspiracy against the defendants, as well as the attorneys for IP Petroleum: John Y. Pearce and the law firm of Montgomery Barnett, L.L.P. See Quality 7, 144 So.3d at 1018. The 4trial court denied the plaintiffs’ motion to amend their pleadings to add the above-described defendants. See Quality I, 144 So.3d at 1018.
Thereafter, Quality and the St. Martins filed the instant suit on December 1, 2006, against IP Petroleum, International Paper Company, Montgomery Barnett, L.L.P., and Mr. Pearce, which is the subject of this appeal. The plaintiffs again asserted a claim for unpaid royalties for production from the IP Pet. PPCO No. 1 well against IP Petroleum and International Paper, specifically, the previously-paid royalties in the amount of $817,464,29. The plaintiffs also asserted a claim against IP Petroleum and International Paper Company for double the amount of royalties due, interest, *361 and attorney’s fees pursuant to La. R.S. 31:137, et seq. The plaintiffs asserted a claim against Mr. Pearce and Montgomery Barnett, L.L.P. for the escrowed royalties, in the amount of $106,977.66, as well as damages and attorney’s fees. Further, the plaintiffs sought damages against all,the defendants for certain alleged “willful and deliberate acts” under the Louisiana Unfair Trade Practices Act (hereinafter “LUTPA”), La. R.S. 51:1401, et seq. See Quality I, 144 So.3d at 1018. Additionally, under LUTPA, the plaintiffs sought three times the actual damages shown at the trial of this matter for the defendants’ knowing commitment of the alleged unfair and deceptive acts. The instant suit bears trial court docket number 149,973 and was assigned to a different division of the 32nd JDC in Terrebonne Parish—Division B— which is presided over by Judge John R. Walker. This suit is referred to by the parties, as the “Blue Line II” litigation.[6] See Quality I, 144 So.3d at 1018.
The case came before the trial court for trial on May 11,12, and 13, and September 14 and 15, 2009. Thereafter, the trial court signed a judgment on October 28, 2011, in favor of the plaintiffs and against the defendants, decreeing 100% ownership of the mineral rights in the plaintiffs, and ordering IP Petroleum to pay a total of $6,725,375.98 for unpaid royalties, penalties (twice the royalties due), interest on unpaid royalties and penalties from July 1, 1997, through October 28, 2011, and 25% attorney’s fees. As to the LUTPA claim, the judgment ordered IP Petroleum, International Paper Company, Mr. Pearce, and Montgomery Barnett, L.L.P. to pay a total of $4,549,227.91 in penalties (triple urtpaid royalties), interest on treble damages from the date of demand, and 25% attorney’s fees. See Quality I, 144 So.3d at 1019.
IfiThe defendants suspensively appealed the October 28, 2011 judgment of the trial court. The plaintiffs did not appeal any portion of the trial court’s judgment. On appeal, this court vacated the judgment of the trial court in an unpublished, summary opinion. See Quality Environmental Processes, Inc. v. I.P. Petroleum Co., Inc., 2012-CA-0776, 2013 WL 690535 (La. App. 1 Cir. Feb. 25, 2013). This court held the trial court erred in finding that the plaintiffs obtained 100% ownership rights in the mineral rights at issue, and erred in awarding damages, penalties, interest, attorney’s fees, and costs to the plaintiffs. This court remanded the case to the trial court to consider the plaintiffs’ claims in connection with any mineral interests they may have obtained by virtue of their 2001 and 2005 settlements with Phillips and Noble Energy. This court did not address the merits of the plaintiffs’ LUTPA claims, and the defendants unsuccessfully sought rehearing regarding those claims. Following the decision of this court, the plaintiffs and defendants each filed writ applications with the Louisiana Supreme Court, which were granted.[7]
The supreme court affirmed the decision of this court in Quality I, holding: (1) the 1966 mineral deed was sufficiently specific to identify the property to be conveyed and thus, to create a valid mineral servitude and to place third parties on notice of *362 the-existence of that servitude; (2) the St. Martins and Quality did not acquire the mineral rights- to the subject property via the 1992 warranty deed whereby'they purchased the St. Martin property; (3) the actions of the defendants did not rise to the level of an unfair trade practice within the meaning of LUTPA; and (4) affirmed this court’s remand of the case to the trial court for consideration of any royalty payment issues stemming from the after-acquired. rights, if any, arising out. of the 2001 and 2005 settlements. See Quality I, 144 So.3d at 1027.
Following remand, IP Petroleum and International Paper, and Montgomery Barnett, L.L.P. and Mr. Pearce, filed peremptory exceptions raising the objection of res judicata, wherein the defendants argued, that the supreme court’s dismissal of the plaintiffs’ LUTPA claims in Quality I barred the plaintiffs from asserting any further tort claims related to, or arising from the same conduct that was the subject of the. supreme court’s dismissal of the LUTPA claims.[8] The plaintiffs opposed the exceptions. The trial court denied the defendants’ exceptions pleading res In judicata. The defendants filed supervisory writs with this court and writs of certio-rari with the supreme court, which were denied.[9]
On September 21 and November 10, 2Q15, the trial court conducted a bench trial in accordance, with the supreme court’s remand order in Quality I to consider “any -royalty payment issues stemming from the after-acquired rights, if any, arising out of the 2001 and 2005 settlements.” See Quality I, 144 So.3d at 1027. At the conclusion of the bench trial, the trial court held the plaintiffs were not entitled to $817,464.20 in previously-paid royalties, and dismissed that claim.[10] The trial court held, however, the plaintiffs were entitled to unpaid mineral royalties in the amount of $107,612.67, which was the amount of the mineral royalties held in escrow by Montgomery Barnett, L.L.P. on behalf of its client, IP Petroleum; $215,225.34 in statutory penalties pursuant to La. R.S. 31:139 (double the royalty award); $230,563.83 in interest on the unpaid royalties and penalties from October 31, 2002, through October 31, 2015; and $138,350.46 in attorney’s fees, representing 25% of the total award of the royalties, penalties, and interest. The trial court also considered whether the plaintiffs were entitled to any damages arising out of the defendants’ alleged tortious conduct relative to the escrowed royalties. The trial court ruled that the defendants did intentionally withhold money (ie., the escrowed royalties), which it held ■ the plaintiffs were entitled to receive,’"and awarded the plaintiffs $691,752.30 in damages (which happens to be the sum of the escrowed royalties, the penalty award, interest, and attorney’s fees award).
The trial court signed a judgment in accordance with its ruling on December 21, *363 2015. The judgment provided that all the awards provided for therein would bear legal interest in accordance with law and assessed all costs against the defendants. Thereafter, IP Petroleum, International Paper, Montgomery Barnett, L.L.P., ;and Mr. Pearce suspensively appealed the trial court’s December 21, 2015 final judgment.[11] The plaintiffs filed a devolutive appeal of the trial court’s judgment.
I ASSIGNMENTS OF ERROR
IP Petroleum and International Paper assign the following as error on appeal:
1.
The trial court erred in denying IP Defendants’ exception of res judicata with respect to the plaintiffs’ claim for tort damages.
2.
The trial court erred in awarding mineral royalties, a statutory penalty[,] and attorney fees to plaintiffs when plaintiffs did not prove that the relevant settlements and conveyances gave them any rights to the royalties nor did they prove an unreasonable failure to pay them; it erred in, miscalculating any penalty due; and, if a statutory penalty and attorney fees are awarded, it was error for the trial court to calculate judicial interest on those awards from any date other than the date of the judgment awarding them (December 21, 2015).
3.
The trial court erred in awarding tort damages for an intentional tort when the plaintiffs did not prove that a tort had been committed, or that they suffered any damages* ,if it had.
4;
The trial court erredm awarding duplicate damages' to the' plaintiffs by “measuring” their tort damages by the very same amounts- (and awarding those amounts) that they had already been awarded on their claim for royalties, and in the -calculation of judicial interest on the tort damages.
5.
The trial court erred in failing to provide that its dismissal- of the plaintiffs’ claim for $817,464.29 in previously-paid royalties was with prejudice and in failing to dismiss with prejudice any and all remaining claims of the plaintiffs other than . the intentional tort claim upon which relief was granted..
In their appeal of the trial court’s judgment, Mr. Pearce and Montgomery Bar-net, L.L.P. assert the following as error on appeal:
1) The trial court erred in denying the exceptions of res- judicata with respect to the tort claim.
2) The trial court erred in holding that an attorney can be liable for the intentional tort -of conversion for holding funds in a trust account where ownership of those funds is and remains in dispute.
3) The trial court erred in awarding damages for intentional tort in the absence of any evidence that a tort had been committed or that damages had been incurred.
*364 4) The trial court erred in awarding duplicate damages, as well as interest on interest, to the Plaintiffs by “measuring” tort damages by the very same amounts already awarded on the claim for royalties.
Quality and the St. Martins also appeal the judgment of the trial court. On appeal, the plaintiffs assign error to the trial court’s dismissal of their claim to the previously-paid royalties in the amount of $817,464.29.
I «LAW AND DISCUSSION
Defendants’ Exceptions Pleading Res Judicata
In their first assignments of error, the defendants argue the trial court erred in denying their peremptory exceptions pleading the objection of res judicata with respect to the plaintiffs’ claims for tort damages. The trial court’s denial of the defendants’ peremptory exceptions raising the objection of res judicata is interlocutory in nature and generally not appeal-able. However, when an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory rulings, in addition to review of the final judgment. Cajun Constructors, Inc. v. EcoProduct Solutions, LP, 2015-0049 (La.App. 1 Cir. 9/18/15), 182 So.3d 149, 155, writ denied, 2015-1908 (La. 11/20/15), 180 So.3d 1287.
The question before the trial court was whether, following appeal and the supreme court’s ruling and remand order in Quality I, res judicata barred the plaintiffs from litigating their intentional tort claims on remand. The defendants contend that the supreme court’s opinion in Quality I unanimously held that the plaintiffs were not entitled to damages under LUTPA because their claims of alleged tortious conduct by the defendants did not rise to the level of a LUTPA violation; the supreme court likened the alleged conduct to a discovery dispute, which could potentially violate rules pertaining to discovery or ethical conduct. Thus, according to the defendants, the supreme court’s rejection of the plaintiffs’ LUTPA claims in Quality I completely resolved, in the favor of the defendants, all theories of recovery sounding in tort. The defendants further argue that the plaintiffs are barred by res judicata from relitigating any tort claims because this court, affirmed by the supreme court, remanded the matter solely on the narrow issue of after-acquired titles, if any, to the mineral rights.
The plaintiffs assert their petition includes, and has always included, tort claims that are distinguishable and independent of the LUTPA claims. The plaintiffs contend that following trial in 2009, the trial court found that all of their allegations of tortious conduct by the defendants were supported, and that this court, in our 2013 summary opinion, did not disturb any of the factual determinations made by the trial court. The plaintiffs further argue that although the supreme court held in Quality I that the defendants’ actions did not rise to the level of a LUTPA violation, the supreme court did not absolve the defendants of all tort liability, and further argued that its remand on the narrow issue of the after-acquired titles was a partial judgment and did not encompass issues related to the defendants’ alleged tortious conduct.
19/ges judicata, literally “the thing adjudged,” bars relitigation of a subject matter arising from the same transaction or occurrence of a previous suit and promotes judicial efficiency and final resolution of disputes. Landry v. Town of Livingston Police Department, 2010-0673 (La. App. 1 Cir. 12/22/10), 54 So.3d 772, 776. *365 Louisiana Revised Statutes 13:4231 provides for res judicata as follows:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment- arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
(4) The chief inquiry is whether the second action asserts a cause of action that arises out of the transaction or occurrence that was the subject matter of the first action. Landry, 54 So.3d at 776. The Louisiana Supreme Court has further recognized that the doctrine of res judicata bars a subsequent action when all of the following elements are satisfied: (1) the judgment in the first suit is valid; (2) the judgment in the first suit is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of the final judgment in the first suit; and (5) the cause or causes of action in the second suit arose.out of the transaction or occurrence that was the subject matter of the first suit. Burguieres v. Pollingue, 2002-1385 (La. 2/25/03), 843 So.2d 1049, 1053.
The peremptory exception 'raising the objection of res judicata is based on the conclusive legal presumption of a thing previously adjudged between the same parties. The burden of proving the facts essential to sustaining the objection is on the party pleading the objection. If any doubt exists as to its application, the exception must be overruled and the second lawsuit maintained. Davis v. JR. Logging, Inc., 2013-0568 (La.App. 1 Cir. 11/8/13), 136 So.3d 828, 830-31, writ denied, 2014-0860 (La. 6/20/14), 141 So.3d 812. The standard of review of a peremptory exception pleading res judicata requires an appellate court to determine if the trial hpcourt’s decision is legally correct or incorrect. Myers v. National Union Fire Ins. Co. of Louisiana, 2009-1517 (La. App 4 Cir. 5/19/10), 43 So.3d 207, 210, writ denied, 2010-2049 (La. 11/12/10), 49 So.3d 892. When an objection of res judicata is raised before the case is submitted ,and evidence is received on the objection, the standard of review on appeal is manifest error, otherwise, the res judicata effect of a prior judgment is a question of law that is reviewed de novo. See Davis, 136 So.3d at 830-31. Since evidence has already been submitted in the instant case, and the trial court has made its ruling based upon this evidence, we have before us a question of law where a de novo review is the appropriate standard of review.
Based on the foregoing, res judi-cata is not the proper procedural principle to determine whether the plaintiffs are barred from allegedly attempting to re-litigate tort claims on remand. None of the elements set forth in La. R.S. 13:4231 and the accompanying jurisprudence are met. At its core, res judicata envisions a second suit. Here, there is no second suit, merely judgments of the trial and appellate courts *366 within the same suit. The law-of-the-case doctrine, as opposed to res judicata, is the proper procedural principle for describing the relationship between prior judgments by trial and appellate courts rendered within the same case. Posey v. Smith, 453 So.2d 1016 (La. App. 3 Cir. 1984).
 The law-of-the-case doctrine embodies the principle that an appellate court generally does not revisit: its own rulings of law on a subsequent appeal in the same case. See Trans Louisiana Gas Co. v. Louisiana Ins. Guar. Ass’n, 96-1477 (La.App. 1 Cir. 5/9/97), 693 So.2d 893, 896, writ not considered, 95-0853 (La. 4/21/95), 653 So.2d 555. The law-of-the-case doctrine is a discretionary guide which relates to (a) the binding force of a trial judge’s ruling during the later stages of tidal; (b) the conclusive effects of appellate rulings at trial on remand; and (c) the rule that an appellate court ordinarily will not reconsider its own rulings of law on a subsequent appeal in the same case. Jones v. McDonald’s Corp., 97-2287 (La.App. 1 Cir. 11/6/98), 723 So.2d 492, 494, writ not considered, 98-3057 (La. 2/5/99), 737 So.2d 738, citing Louisiana Land and Exploration Co. v. Verdin, 95-2579 (La.App. 1 Cir. 9/27/96), 681 So.2d 63, 65, writ denied, 96-2629 (La. 12/13/96), 692 So.2d 1067, cert. denied, 520 U.S. 1212, 117 S.Ct. 1696, 137 L.Ed.2d 822 (1997). It applies to all prior rulings or decisions of an appellate court or the supreme^ court in the same case, not merely those arising from the full appeal process. Jones v. McDonald’s Corp., 723 So.2d at 494, citing Brumfield v. Dyson, 418 So.2d 21, 23 (La. App. 1 Cir.), writ denied, 422 So.2d 162 (La. 1982). The reasoning behind the law-jof-the-casen doctrine is, to avoid relitigation of the same issue, to promote consistency of result in the same litigation, and to promote efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue. Jones v. McDonald’s Corp., 723 So.2d at 494, citing Louisiana Land and Exploration Co. v. Verdin, 681 So.2d at 65. Reargument in the same case of a previously decided point will be barred where there is simply a doubt as to the correctness of the earlier ruling. The law-of-the-case doctrine is not an inflexible law, thus appellate courts are not absolutely bound thereby and may exercise discretion in application of the doctrine. Jones v. McDonald’s Corp., 723 So.2d at 495. The doctrine is not applied in cases of palpable error or where, if the law of the case were applied, manifest injustice would occur. Jones v. McDonald’s Corp., 723 So.2d at 494, citing Glenwood Hosp., Inc. v. Louisiana Hosp. Serv., Inc., 419 So.2d 1269, 1271 (La. App. 1 Cir. 1982). The doctrine' applies only against those who were parties to the case when the earlier decision was rendered, and who thus have had their day in court. Day v. Campbell-Grosjean Roofing & Sheet Metal Corp., 260 La. 325, 256 So.2d 105, 107 (1971).
Thus, it is the law-of-the-case doctrine, not res judicata; which determines whether the plaintiffs’ intentional tort claims are barred on remand. Therefore, the trial court did not err in denying the defendants’ peremptory exceptions raising- the objection of res judicata. These assignments of error are without merit.[12]
Plaintiffs’ Tort Damages
In their second assignment of error, Mr. Pearce and Montgomery Barnett, L.L.P. argue the trial court erred in holding that *367 an attorney can be liable for the intentional tort of conversion for holding funds in a trust account .where ownership of those funds is and remains in dispute.
In' their third assignments of error, all the defendants argüe the trial court- erred in awarding the plaintiffs damages for an intentional tort because the plaintiffs failed to prove the defendants committed any intentional tort; or, if the plaintiffs did prove the defendants committed a tort, the plaintiffs failed to prove they suffered actual damages.
In their fourth assignments of error, all the defendants argue the trial court erred in awarding duplicate damages to the plaintiffs by “measuring” their tort- damages by the same | ^amounts already awarded for the escrowed royalties claim, and in the calculation of the judicial interest on the damage award.

Scope of the Supreme Court’s Remand Order

The order of remand by the supreme court directed that further proceedings be conducted on “any royalty payment issues stemming from the after-acquired rights, if any, arising out of the 2001 and 2005 settlements,” See Quality I, 144 So.3d at 1027. The order of remand did not authorize a full re-trial on the, merits or reconsideration of all of the causes of action set forth in the plaintiffs’ original petition. Accordingly, on remand of this matter, the trial- court did not have the authority to consider issues other than those for which the. case was remanded. See City of Shreveport v. Kansas City Southern Railway Co., 193 La. 277, 190 So. 404, 405 (1939), cert. denied, 308 U.S. 621, 60 S.Ct. 298, 84 L.Ed. 519 (1939); In re Belle Co., L.L.C., 2006-1077 (La.App. 1 Cir. 12/28/07), 978 So.2d 977, 986, units denied, 2008-0220, 2008-0229 (La. 3/24/08), 977 So.2d 958, 958; MTU of North America, Inc. v. Raven Marine, Inc., 499 So.2d 289, 291 (La. App. 1st Cir. 1986), writs denied, 501 So.2d 773, 776 (La. 1987). We note, however, that when the supreme court remands a cause on a single point, it remands it also for an inquiry into all the questions which grow out of the decision of that point. See Boatner v. Ventriss, 2 La. 172, 174 (1831). Thus, we interpret .the remand order—to consider “any royalty payment issues stemming from the after-acquired rights”—to include consideration of any tortious behavior by the defendants relating to the unpaid royalties.

Plaintiffs’ Tort Claims

Following trial in 2009, the trial court' ruled the defendants’ actions violated LUTPA; 'however, the trial court did not expressly rule on or award damages to the plaintiffs for- any tort, intentional or otherwise, committed by the defendants. On appeal, this court did not address the merits of the LUTPA claims, nor of any tort claims.
■ The supreme court specifically addressed the plaintiffs’ LUTPA claims in Quality I and categorized the plaintiffs’ allegations in two actions leading to a LUTPA violation: 1) the defendants failed to disclose—despite several interrogatories and requests for production—to the plaintiffs that Mr. Pearce and Montgomery Barnett, L.L.P. were in possession of the escrowed mineral royalties; and 2) the defendants failed to invoke a concursus proceeding after receiving the escrowed mineral royalties. The supreme court held:
[T]he defendants’ actions in this case do not violate LUTPA because they do not fall under the protection of LUTPA’s narrow 1 iagoal of protecting against egregious actions of fraudulent, deceitful, and unfair business practices to promote and foster healthy and fair business competition. Rather, the defendants’ actions are more appropriately *368 governed by our Code of Civil Procedure’s discovery rules, which are meant to afford all parties to a lawsuit full and fair opportunities to obtain facts pertinent to the litigation. Accordingly, we conclude the trial court under the facts of this case erred in finding the defendants violated the provisions of LUT-PA.
See Quality I, 144 So.3d at 1026. The supreme court dismissed the plaintiffs’ claims under LUTPA as to IP Petroleum, International Paper, Mr. Pearce, and Montgomery Barnett, L.L.P. The supreme court made no ruling on any tort claims. Following the supreme court’s remand, the plaintiffs did not amend their petition.
On remand, the trial court held the defendants committed the intentional tort of “the withholding of money to which another is entitled,” and stated that not providing information to the plaintiffs regarding the escrowed royalties and “by not filing the concursus, which was a deliberate and intentional act, [the defendants] prevented any rightful owner from asserting a claim to the $107,000., .and they stopped the plaintiff from making a claim for that money.”
The defendants argue the plaintiffs did not include any intentional tort claims in their original petition for damages; and, if such causes of action were properly pled, the supreme court’s ruling in Quality I sufficiently held that the alleged tortious behavior of the defendants were discovery or ethics violations and did not rise to the level of an unfair trade practice or violate the provisions of LUTPA. Since the facts constituting the basis of the LUTPA claims were addressed and dismissed by the supreme court, the defendants argue the doctrine of res judicata bars the plaintiffs from re-asserting those claims on remand.
The plaintiffs assert, however, their petition includes, and has always included, intentional tort claims relating to the conduct of the defendants, which are distinguishable and independent from the LUT-PA claims. The plaintiffs’ petition alleges “deliberate and bad faith”; a conspiracy and developed plan by which IP Petroleum retained for itself suspended royalty payments; a conspiracy and developed plan by which IP retained for itself the royalty payments made by Pure Resources to Montgomery Barnett, L.L.P. to settle or pay the obligations of IP Petroleum in Blue Line I; and in furtherance of the plan or conspiracy, IP Petroleum and Mr. Pearce did not comply with and/or breached the agreement respecting the tender of royalties, calculated to conceal the true facts, and deliberately misled the plaintiffs in an attempt to make IP Petroleum judgment proof. The plaintiffs contend that following trial in 2009, the trial court 114found all of these allegations were supported when it found the actions to be violations of LUTPA, and that this court, in our 2013 summary opinion, did not disturb any of the factual determinations .made by the trial court regarding the LUTPA claims. The plaintiffs further argue that although the supreme court held the defendants did not violate LUTPA, the supreme court did not absolve the defendants of all tort liability.
We must first determine whether the plaintiffs’ petition states a cause of action in tort. If we find the petition properly states a cause of action in tort, we must then determine whether the plaintiffs established a prima facie case of their causes of action in tort. We must also consider whether the supreme court’s dismissal of the LUTPA claim constitutes the law-of-the-case and bars litigation of any intentional torts claims made by the plaintiffs.
*369 In deciding whether a petition states a cause of action, a court must accept the facts alleged in the petition without reference to any extraneous supporting or controverting evidence. La. C.C.P. art. 931; Robinson v. North American Royalties, Inc., 470 So.2d 112, 114 (La. 1985) (per curiam). The court must accept well pleaded allegations of fact as true, and the issue at the trial is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Kuebler v. Martin, 578 So.2d 113, 114 (La. 1991) (per curiam).
Louisiana uses a system of pleading based upon the narration of factual allegations. Greemon v. City of Bossier City, 2010-2828 (La. 7/1/11), 65 So.3d 1263, 1268. No technical forms of pleadings are required. All allegations of fact of the petition, exceptions, or answer shall be simple, concise, and direct, and shall be set forth in numbered paragraphs. La. C.C.P. art. 854. The fact-pleading requirement replaces an earlier “theory of the case” pleading requirement. See La. C.C.P. art. 862, Official Revision Comments—1960, cmt. (b). Because the “theory of the case” pleading requirement has been abolished, so long as the facts constituting the claim or defense are alleged or proved, the party may be granted any relief to which he is entitled under the fact-pleadings and evidence. Even though the “theory of the case” need no longer be pled, Louisiana Civil Code article 891 provides that a petition “shall contain a short, clear, and concise statement of all causes of action arising out of, and the material facts of, the transaction or occurrence that is the subject matter of the litigation.” Greemon, 65 So.3d at 1268. The mere conclusion of the pleader unsupported by facts does not- set forth a cause or right of action. Latham v. Latham, 216 La. 791, 44 So.2d 870, 871 (1950). A petition may state multiple causes of actions, arising from the same transaction or occurrence, such as under tort law and | ^unfair trade practices law (i.e., LUTPA). See Gandhi v. Sonal Furniture and Custom Draperies, L.L.C., 49,959 (La.App. 2 Cir. 7/15/15), 192 So.3d 783, 791-92, writ denied, 2015-1547 (La. 10/23/15), 184 So.3d 19.
The supreme court summarized the allegations of the plaintiffs in much detail in Quality I, 144 So.3d at 1023-24. While the plaintiffs did not specifically identify any intentional tort theories in the petition, the plaintiffs did include factual allegations that sufficiently support intentional tort claims and allow for recovery. Based on the well-pleaded factual allegations of the original petition, the plaintiffs’ petition pleads three causes of action under tort law: conversion, fraud, and conspiracy. Under Louisiana Civil Code article 2315, a person may recover damages for injuries caused by a wrongful act of another. In order to prove a prima facie case in an action for damages caused by the alleged tortious conduct of a defendant, a plaintiff-must prove fault, causation, and damages. Gresham v. Davenport, 537 So.2d 1144, 1146 (La. 1989).
The tort of conversion is grounded on the unlawful interference with the ownership or possession of a movable and is committed by the following actions: (1) acquisition of possession in an unauthorized manner; (2) removal of a chattel from one place to another with the intent to exercise control over it; (3) unauthorized transfer of possession of the chattel; (4) withholding possession from the owner; (5) alteration or destruction of the chattel; (6) improper use of the chattel; or (7) assertion of ownership over the chattel. Dual Drilling Co. v. Mills Equipment Investments, Inc., 98-0343 (La. 12/1/98), 721 So.2d 853, 857. In the petition, the plaintiffs alleged IP Petroleum refused to pay *370 royalties to the plaintiffs and instructed Phillips to suspend royalty payments as a result of the Blue. Line I litigation. The plaintiffs .further alleged Mr. Pearce and Montgomery Barnett, L.L.P. refused- to turn over the royalty payments, even after .the plaintiffs obtained the mineral rights owned by Phillips and Noble and no other party was claiming royalties adverse to the plaintiffs.
Fraud is a misrepresentation or a suppression of the truth made with the intention either to .obtain an unjust advantage for one party or to cause a loss or inconvenience to -the other. La. C.C. art. 1053. Fraud need only be proved by a preponderance of the evidence and may be established by circumstantial evidence. La. C.C. art. 1957. The trial court’s findings with respect to a claim of fraud are subject to the manifest error standard, of review. Gandhi v. Sonal Furniture and Custom Draperies, L.L.C., 192 So.3d at 790-91. The plaintiffs alleged the 1 ^defendants failed to comply with discovery requests and failed to disclose numerous documents and agreements between IP Petroleum, Pure Resources, Mr. Pearce, and Montgomery Barnett, L.L.P.
Louisiana Civil Code article 2324(A) provides that “[h]e who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by .such act, To establish a conspiracy, a plaintiff is required to provide evidence of the requisite agreement between the parties; that is, a meeting of the minds or collusion between the parties for the purpose of committing wrongdoing. Prime Ins. Co. v. Imperial Fire and Cas. Ins. Co., 2014-0323 (La.App. 4 Cir. 10/1/14), 151 So.3d 670, 677, unit denied, 2014-2241 (La. 1/9/15), 157 So.3d 1110. The Louisiana Supreme Court has held that conspiracy by itself is not an actionable claim under Louisiana law. The actionable element of a conspiracy claim is not the conspiracy itself but rather the tort that the conspirators agree to perpetrate and actually commit in whole or in part. Ross v. Conoco, Inc., 2002-0299 (La. 10/15/02), 828 So.2d 546, 552.
Whether or not a party has committed the- intentional tort of conversion or fraud, or engaged in a conspiracy, is a question of fact. A court of appeal may not set aside, a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly .wrong.” This court has, announced a two-part test for the reversal of a factfinder’s determinations: 1) The appellate court must find from the record that a reasonable factual basis does not-exist for the finding of the trial court, and 2) the appellate court must further determine that the record establishes that the finding' is clearly wrong (manifestly erroneous). This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court’s finding: it must review the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous.' The question is not whether.the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La. 1993).
Based on our review of the record, we cannot say the trial court mani: festly erred on remand in holding that the defendants committed the intentional torts of conversion, fraud, and conspiracy. Our review of the record, including the trial court’s extensive and detailed oral reasons for judgment, indicates the trial court’s conclusion that the defendants intentionally |17withheld the royalties, intended to *371 suppress the truth regarding the royalties being held in escrow to cause the plaintiffs a loss or inconvenience, and colluded with others to do so, is a reasonable one. Although the supreme court ruled that that the actions of the defendants did not rise to the level of a LUTPA claim, that does not mean the supreme court held that no tortious conduct occurred. While, not all tortious action rises to the level of a LUT-PA claim, a finding that a claim does not fall under the scope of LUTPA does not equate .to a finding that no tortious conduct occurred. The record supports the trial court’s reasonable conclusion that the defendants committed intentional torts, and the supreme court’s dismissal, of the LUTPA claims does not bar litigation of any intentional torts claims made, by the plaintiffs under. the law-of-the-case doctrine. . ,
The trial court awarded $691,752.80 in damages to the plaintiffs for the intentional torts committed by the defendants, which the trial court stated was the sum of the unpaid royalties, the penalty award, interest, and attorney’s fees. In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury. La. C.C. art. 2324.1. Vast discretion is accorded the trier of fact in fixing general damage awards. La. C.C. art. 2324.1; Hollenbeck v. Oceaneering Int., Inc., 96-0377 (La.App. 1 Cir. 11/8/96), 685 So.2d 163, 172, writ denied, 97-0493 (La. 4/4/97), 692 So.2d 421. The discretion vested in- the trier of fact is “great,” even vast, so that an appellate court should rarely disturb an award-of general damages. The role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award but, rather, to review the exercise of discretion by the trier of fact. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La. 1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Before an appellate court can disturb the quantum of an award, the record must clearly reveal that the trier of fact abused its discretion. Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La. 1993), An appellate court may disturb a damage award only when the record clearly reveals that the trial court abused its discretion in making the award, based, on the facts and circumstances peculiar to the case. It is only after such a threshold determination of an abuse of discretion that the appellate court should examine prior awards for similar injuries to modify the award within the range of reasonable discretion. Thongsavanh v. Schemayder, 2009-1462 (La.App. 1 Cir. 5/7/10), 40 So.3d 989, 1002, writ denied, 2010-1295, (La. 9/24/10), 45 So.3d 1074.
|1sBased on our review of the record, we find that the trial court abused its discretion in awarding $691,752.30 for intentional tort damages. As will be further discussed below, we affirm the trial court’s award of the unpaid royalties, statutory penalty award, interest, and attorney’s fees, awarded pursuant to the Mineral Code, La. R.S. 31:137-143. Those awards are meaningful, specifically the statutory penalty award, as it is the maximum punitive measure allowable under La. R.S. 31:139. Louisiana Mineral Code article 139 gives the trial court great discretion' in awarding damages of double the amount of royalties due, but that statute does not mandate that any award be given in excess of the royalties due. Samson Contour Energy E & P, L.L.C. v. Smith, 49,494 (La. App. 2 Cir. 12/29/14), 175 So.3d 967, 977.
The trial -court, ■ in its vast discretion imposed the full force of the punitive statutory remedies available under this portion of Mineral Code; however, under, the general law of conventional -obligations, the *372 measure of damages when the object of performance is a sum of money is interest. La. C.C. art. 2000. We therefore hold that the trial court abused its discretion and awarded an abusively high amount for damages in intentional tort, and we amend the trial court’s damages award to the plaintiffs for the defendants’ commission of intentional torts to $80,966.00, and affirm as amended. We pretermit any further discussion related to these assignments of error.
Unpaid Mineral Royalties, Statutory Penalty, Interest, and Attorney’s Fees
In their second assignment of error, IP Petroleum and International Paper argue the trial court erred in awarding the plaintiffs the escrowed mineral royalties in the amount of $107,612.67, a statutory penalty pursuant to La. R.S. 31:139 in the amount of $215,225.34, and attorney’s fees in the amount of $138,350.46. The defendants argue the plaintiffs did not prove the relevant settlements and conveyances gave them any rights to the escrowed royalties. The defendants also argue the plaintiffs failed to prove that IP Petroleum and International Paper either fraudulently or willfully and unreasonably failed to pay the' escrowed royalties.
IP Petroleum and International Paper also argue that if this court finds that the plaintiffs were entitled to the escrowed royalties and that a statutory penalty was due pursuant to La. R.S. 31:139, the trial court miscalculated the amount of the statutory penalty.
Furthermore, IP Petroleum and International Paper argue that it was error for the trial court to calculate judicial interest on the statutory penalty award and the attorney’s fees from any date other than the date of judgment providing for those awards, ie., December 21, 2015.

^Unpaid Royalties

Louisiana Revised Statutes 31:21 provides that, “[a] mineral servitude is the right of enjoyment of land belonging to another for the purpose of exploring for and producing minerals and reducing them to possession and ownership.” Mineral rights are real rights and are classified as incorporeal immovable property. La. C.C. art. 470; La. R.S. 31:18. A mineral royalty is one of the basic mineral rights that may be created; it is the right to participate in production of minerals from land owned by another, or land subject to a mineral servitude owned by another, and is a right to share in gross production. La. R.S. 31:16; La. R.S. 31:80. A mineral royalty is a real right and is also classified as an incorporable immovable whose transfer or conveyance requires all formalities prescribed for the transfer of any other immovable, including that transfer or ownership thereof must be evidenced by a written contract. La. R.S. 31:16; see Callon Royalty Fund-1980 v. Walker, 461 So.2d 621, 623 (La. App. 1 Cir. 1984).
A landowner may convey, reserve, or lease his right to explore and develop his land for production of minerals and to reduce them to possession; however, such rights must be expressly reserved. La. R.S. 31:15; LeSage v. Ellerbee Builders, Inc., 424 So.2d 282, 283 (La. App. 1 Cir. 1982), writ denied, 430 So.2d 75 (La. 1983). In the context of mineral rights, just as in other contexts, contracts are interpreted to determine the intent of the parties. La. C.C. art. 2045; Quality I, 144 So.3d at 1020. Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. La. C.C. art. 1983. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ *373 intent. La. C.C. art. 2046. Moreover, each provision in a contract must be interpreted in light of the other provisions. La. C.C. art. 2050.
The after-acquired title doctrine is well-established in Louisiana and stands for the proposition that if a vendor sells property he does not own, and subsequently acquires title, the title will automatically vest in his vendee. Sabine Production Co. v. Guaranty Bank & Trust Co., 432 So.2d 1047, 1051 n.5 (La. App. 1 Cir.), writ denied, 438 So.2d 570 (La. 1983). Thus, as soon as the seller actually acquires title, it passes to the person to whom it was sold. The after-acquired title doctrine applies to mineral rights. Article 77 of the Louisiana Mineral Code provides:
If a party purports to acquire a. mineral servitude from a landowner when the right purportedly acquired is outstanding in another and |20the landowner either subsequently acquires the outstanding right or is the owner of the land at the time it is extinguished, the after-acquired title doctrine operates to vest the right in the party who purported to acquire it to the full extent of his title.
La. R.S. 31:77.
In Quality I, the supreme court affirmed that a valid mineral servitude encumbered the St. Martin property, but that the plaintiffs did not acquire any mineral rights to the St. Martin property via their 1992 purchase. However, the supreme court stated: •
The plaintiffs settled their claims with Phillips in 2001 and with Noble Energy in 2005. In the respective settlement agreements, the plaintiffs obtained all of the mineral interest in the St. Martin Property that had belonged to both Phillips and Noble Energy, the so-called after-acquired mineral rights. [Emphasis added.]
Quality I, 144 So.3d at 1018. The supreme court remanded the matter “for consideration of any royalty payment issues stemming from the after-acquired rights, if any, arising out of the 2001 and 2005 settlement.” Quality I, 144 So.3d at 1027. In accordance with the supreme court’s remand order, the trial court considered whether the plaintiffs were entitled to $107,612.67 in mineral royalties. This amount represents suspended mineral royalty payments attributable to production on the well between April 1, 2001, and September 1, 2002, which were placed in escrow by Montgomery Barnett, L.L.P.
In the related appeal, 2016 CA 0171 consolidated with 2016 CA 0172, we affirm a judgment of the trial court granting partial summary judgment in favor of IP Petroleum, and dismissing with prejudice the plaintiffs’ claims for mineral royalties attributable to production on the IP Pet. PPCO No. 1 well prior to April 1, 2001. Thus, if the plaintiffs are entitled to any royalty payments arising out of the interests they obtained from Phillips and Noble Energy in the 2001 and 2005 settlements, they would only be entitled to royalties attributable to production on the well after April 1, 2001. The question of whether the plaintiffs are entitled to royalty payments by virtue of the 2001 and 2005 settlements is a question of fact and is reviewed under the manifest error standard of review. See Stobart, 617 So.2d at 882.
The first settlement agreement mentioned by the supreme court in Quality I—the 2001 settlement—is evidenced by a “Settlement Agreement” between the plaintiffs and Phillips. Pursuant to this agreement, Phillips agreed to “convey or assign” to the plaintiffs, among other things, all “mineral interests or mineral rights” in and to the land which is the subject of the present litigation. This con *374 veyance or assignment was accomplished by an act of Assignment, Transfer and Conveyance signed by all the parties with an effective time of 7:00 a.m. on April 1, |212001. Paragraph 2(d) of the Assignment, Transfer and Conveyance excluded the assignment, transfer, or conveyance of any of Phillips’s mineral rights to the plaintiffs prior to the effective time and date. Paragraph 7(e) likewise retains for Phillips all rights and obligations regarding outstanding accounts receivable pertaining to the mineral interest for periods prior to the effective time of the settlement agreement. Thus, when Phillips conveyed all of its mineral interest to the plaintiffs, the plaintiffs 1 obtained interest in the royalties attributable to production as of 7:00 a.m. on April 1,2001.
The second settlement mentioned by the supreme court in Quality I—the 2005 settlement—is evidenced by a “Confidential Settlement Agreement” between the plaintiffs and several parties, including Nobie Energy. Quality and the St. Martins signed the confidential agreement 'on December 13, 2005, and Noble Energy signed the agreement on December 19, 2005. In pertinent part, the agreement obligated Noble Energy to execute in favor of the plaintiffs a mineral conveyance document. By “Mineral Deed” signed by each of the parties on the same day, éach of them signed the Confidential Settlement Agreement, Noble Energy conveyed to the plaintiffs “all of Noble’s rights, title and interest in all mineral rights of every kind and character” in and under the land at issue. On its face, the Mineral Deed has prospective effect only; however, the terms and conditions of the Confidential Settlement Agreement demonstrate that the intent of the parties was to “compromise and settle their differences and claims against each other [... ] including all claims which could have been brought, relating in any way to the ownership of minerals [...].” Paragraph four of “Attachment B” to the Confidential Settlement Agreement, titled “Salient Terms of Settlement,” provides that “Noble will convey and assign to [the plaintiffs] all of its claims to minerals in Areas 4 and 8,” which includes the property'where IP Pet. PPCO No. 1 well is located. Furthermore, Paragraph one' of the “Salient Terms of Settlement” provides that “Noble will release, relinquish, waive [,] and disclaim any and all claims to all funds on deposit in the bélow identified concursus proceedings and/or escrow accounts,” which includes the disputed funds being held in escrow, well before December 19, 2005, when this Confidential Settlement Agreement was executed by the parties.
While no temporal limit is expressed in the agreement, we conclude that all claims between the parties relative to mineral royalty payments were included in the terms of the settlement. Thus, pursuant to their confidential settlement with Noble Energy, the plaintiffs | ¡^obtained all of Noble Energy’s interest in the royalties attributable to production as of April 1, 2001.
The disputed mineral royalties total $107,612.67, which represents suspended royalty payments IP Petroleum would have paid to Phillips and Noble Energy for production on the well from April . 1, 2001, through September 1, 2002. It is settled that the plaintiffs have obtained Phillips’s and Noble Energy’s mineral interests in the St. Martin property. The plaintiffs are therefore entitled to the unpaid mineral royalties, currently held in escrow, that correspond to the mineral interest conveyed to them by Phillips and Noble Energy in. the settlements.
Based on-the foregoing, we find the trial court did not err in awarding the unpaid mineral royalties to the plaintiffs.' We therefore affirm the trial court’s award of *375 $107,612.67 in unpaid mineral royalties to the plaintiffs currently held in escrow by Montgomery Barnett, L.L.P. We pretermit any further discussion of this assignment of error.

Statutory Penalty

In accordance with its ruling that the plaintiffs were entitled to the escrowed mineral royalties in the amount of $107,612.67, the trial court awarded the plaintiffs a penalty of double the royalties owed, in the amount of $215,225.34 pursuant to La. .R.S. 31:139, which provides:
If the lessee'pays the royalties due in response to the required notice, the remedy of dissolution shall be unavailable unless it be found that the. original failure to pay was fraudulent. The court may award as damages double the amount of royalties due, interest on that sum from the date due, and a reasonable attorney’s fee, provided the original, failure to pay royalties was either fraudulent or willful and without reasonable grounds. In all other cases, such as mere oversight or neglect, damages shall be limited to interest on the royalties computed from the date due, and a reasonable attorney’s fee if such interest is not paid within thirty days of written demand therefor.
The relevant language of La. R.S. 31:139 is that, “[t]he court may award as damages double the amount of royalties due, interest on that sum from the date due, and a reasonable attorney’s fee, provided the original failure to pay royalties was either fraudulent or ••willful and without reasonable grounds.” (Emphasis added.) The legislature’s use of “may” in Section 139 is explicit that the trial court’s award of double damages and attorney’s ■fees -is discretionary. Appellate review of such discretionary decisions is conducted under the “abuse of discretion” standard of review. Generally, an abuse of discretion results from a conclusion reached capriciously or in an arbitrary manner. Burst v. Board of Com’rs, Port of New Orleans, 93-2069 (La.App. 1 Cir. 10/7/94), 646 So.2d 955, 958, writ considered, 95-0265 (La. 3/24/95), 651 So.2d 284. The word “arbitrary” implies a disregard of evidence or of the proper weight thereof. Burst, 646 So.2d at 958. A conclusion: is. “capricious” when there is no substantial evidence to support it or the conclusion is contrary to substantiated competent evidence. Burst, 646 So.2d at 958.
In order to potentially award the discretionary penalty and attorney’s fees under La. R.S. 31:139, the trial court merely had to find that the defendants’ actions in delaying payment of royalties to the royalty owners was “either fraudulent or willful and without reasonable grounds.” La. R.S. 31:139. Such a finding is a finding of fact and reviewed under the manifest error standard of review. See Stobart, 617 So.2d at 882.
In oral reasons for judgment, the trial court stated:
Obviously Mr. Pearce was aware he was holding [$] 107,000 in royalties, and royalty information had been clearly requested by 'the plaintiffs as shown in their discovery requests. So ' that the defendants and the defendant attorneys were holding royalties, the answers that they gave were, in this Court’s opinion, false, they were obviously misleading, they were deliberate, they were intentional. Whatever their motivations -may have been-, you can say what you want, plaintiff did not know of the 107 when discovery was originally propounded. Which was originally, though nobody raised that record, originally—that was way back before 2004, if you go into the record of that matter. And, of course, *376 Judge Arceneaux dealt with a bunch of those things.
There was a [great] deal of litigation, there was some arguments about prescription and mineral royalties before 1997 in connection with the Mobil, Phillips and E.D.C. And E.D.C. later became Noble as shown by the documents, but E.D.C, had a 40 percent interest in those particular royalties.
* ⅜ *
Phillips settled. Plaintiffs acquired Phillips’ 60 percent interest, E.D.C., who later became Noble, had the other 40 percent; and plaintiffs made demand.,. of I.P. for the payment of royalties relating to the Phillips minerals.
This transaction between I.P. Petroleum and Pure was supposed to become effective... January 29th of 2001. The conversations, and while there’s issue made about a concursus not being filed and that I.P. Petroleum violated that agreement, and the issue of whether they were legally—what the legal obligations were, there relevance is that, one, there was no concursus. And the Court does not say nor do plaintiffs that there is a legal obligation, but what the conduct that took place shows was that the defendants were not revealing 'and did not intend to reveal the... 107,000 that they were holding, from the year 2002.. .the $106,000.00 check and then there was a 600 something dollar check, those stayed on Mr. Pearce’s desk for almost eight months... Subsequently those money were deposited into the account of Montgomery Barnett, and that took place in June of 2003, if I recall the date correctly....
[[Image here]]
Various discovery requests and copies of the answers that were filed were filed into the record as evidence in connection with this matter. Mr. Pearce on behalf of I.P. Petroleum responded that despite an exhaustive search, the materials being sought could not be found, they were believed delivered to Pure. Well, still didn’t l^assert—even though there had been a request made about the royalties, still didn’t assert that those were in the escrow account of Montgomery Barnett.
And, of course, I do not believe that Mr. Pearce did not have access to some of these documents, and neither did Judge Arceneaux. He said he found that—basically his response was in the transcript he found it unbelievable that Mr. Pearce didn’t have something.
⅜ ⅝ ⅜
Plaintiffs have made a claim for it. And that was the very object of the petition. They claimed to be the 100 percent owner of the minerals, and they said we’re entitled to the minerals, we’re entitled to the royalties, we were entitled to the 107.
⅜ ⅜ $
At no time has I.P., I.P. Petroleum, Mr. Pearce, Montgomery Barnett or anyone else ever asserted anything that would be a claim to that money. On the proceedings in this division of court there have been no claims asserted. And that’s what counts, this division of court.
* * *
By virtue of plaintiffs case not being heard in Judge Arceneaux’s division of court, we had litigation that lingered on. And the primary culprits of that litigation was the $107,000.00 that was being held by the defendants in this case.
⅜ ‡ ⅜
The Court finds that I.P. Petroleum drilled the well known as the I.P. P.P.C.O. Number 1 well and produced and sold gas within Terrebonne Parish, and that was on the well that was located on the St. Martin property; there *377 were leases and mineral leases and other mineral transactions; that plaintiffs made demand upon I.P. Petroleum to send the royalties, and that without legal justification they intentionally and deliberately refused to pay the St. Martin the mineral royalties to which they were entitled. And I am particularly referring to... the $107,612.67 that was in the possession of the defendant Montgomery Barnett’s trust account, originally placed there by Mr. Pearce as a result of transactions not disclosed and withheld from the plaintiffs despite the request for discovery.
The Court finds that these violations—that the defendants were in violation of Louisiana Revised Statute[s] 31:137; that the plaintiffs are entitled to damages which include the royalties, double the royalties, interest on that total, and then attorney fees.
We find no error in the trial court’s factual findings that the defendants’ actions in delaying payment of royalties to the plaintiffs was “either fraudulent or willful and without reasonable grounds.” See La. R.S. 31:139. We likewise find that the trial court did not abuse its discretion in awarding statutory penalties, as his decision was neither arbitrary nor capricious.[13] We affirm the trial court’s award to. the plaintiffs of a penalty of double the royalties owed, in the amount of $215,225.34 pursuant to La. R.S. 31:139. We pretermit any further discussion of this assignment of error.

^Attorney’s Fees

Pursuant to La. R.S. 31:139, the' trial court awarded statutory attor-nej^s fees to the plaintiffs in the amount of $138,350.46, which is 25% of the total award of royalties, penalties, and interest. It is well recognized in the jurisprudence of this state that as a general rule, attorney’s fees are not allowed except when authorized by statute or contract. Killebrew v. Abbott Labs., 359 So,2d 1275, 1278 (La. 1978); Preis Gordon, APLC v. Chandler, 2015-0958 (La.App. 1 Cir. 2/26/16), 191 So.3d 31, 37-38, writ denied, 2016-0590 (La. 5/20/16), 191 So.3d 1067. Louisiana Revised Statutes 31:139 authorizes a trial court to award' a “reasonable” attorney’s fee. This authorization of the trial court to award attorney’s fees results from actions that are “either fraudulent or willful and without reasonable grounds.” La. R.S. 31:139. We find it clear that the award of attorney’s' fees under this statute is penal in nature. As such, the value of the attorney’s fees does not need to be proven. See Oracle 1031 Exchange, LLC v. Bourque, 2011-1133 (La.App. 3 Cir. 2/8/12), 85 So.3d 736, 742, writ denied, 2012-0546 (La. 4/20/12), 85 So.3d 1272.
The Louisiana Supreme Court has set forth ten factors to be considered in determining the reasonableness of attorney’s fees: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances made; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court’s own knowledge. State, Dep’t of Transp. and Dev. v. Williamson, 597 So.2d 439, 442 (La. 1992). *378 These factors are> applied on a case-by-case basis. Williamson, 597 So.2d at 442 n.9; see also Covington v. McNeese State Univ., 2012-2182 (La. 5/7/13), 118 So.3d 343, 348, writ denied, 2012-2231 (La. 1/17/14), 130 So.3d 338.
An appellate court must use the “clearly wrong” or “manifestly erroneous” standard of review in considering a trial court’s consideration of the ten factors and factual findings relating to the reasonableness of an attorney’s fee. Whitney Bank v. NOGG, L.L.C., 2015-1399 (La. App. 1 Cir. 6/3/16), 194 So.3d 819, 824. The “abuse of discretion” standard of review applies to an appellate review of an amount awarded by a trial court as a reasonable fee after a finding that a fee was clearly excessive. Whitney Bank, 194 So.3d at 824. The trial court has much discretion in fixing an award of attorney’s fees, and its award will not be modified on appeal absent a showing of an abuse of discretion. Whitney Bank, 194 So.3d at 824.
| gfjTurning to this particular case, we must examine the record in light of the trial court’s consideration of the ten above-mentioned factors to determine whether the attorney’s fees award was reasonable. Based on our review, specifically the trial court’s oral reasons for judgment, we find no error in the trial court's factual findings that the plaintiffs are entitled to attorney’s fees. We affirm the trial court’s award of statutory attorney’s fees to the plaintiffs in the amount of $138,350.46.

Interest

IP Petroleum and International Paper argue that it was error for the trial court to calculate judicial interest on the statutory penalty award and the attorney’s fees from any date other than the date of judgment providing for those awards, ie., December 21, 2015.
As to the interest on the damages award, the relevant language of La. R.S. 31:139 provides that, “[t]he court may award as damages double the amount of royalties due, interest on that sum from the date due, and a reasonable attorney’s fee, provided the original failure to pay royalties was either fraudulent or willful and without reasonable grounds.” (Emphasis added.). Therefore, interest awarded under La. R.S. 31:139 on the statutory penalty is awarded from the date that award is due. The “date due” under La. R.S. 31:139—for the commencement of the interest award to the plaintiffs, the mineral interest holders, for the defendants’ delay in making royalty payments—is the date of full online production, not the date of the holders’ royalty demand, since royalties to the mineral interest holders are due from the time the product is produced. Hilliard v. Amoco Production Co., 95-1366 (La.App. 3 Cir. 10/9/96), 688 So.2d 1176, 1180.
As to interest on the attorney’s fees award, we note that La. R.S. 31:139 does not provide for interest on an attorney’s fees award; therefore, because attorney’s fees are not ascertainable until awarded by the court, interest thereon runs only from the date awarded, in this instance, December 21, 2015, the date of judgment. See L & A Contracting Co., Inc. v. Ram Indus. Coatings, Inc., 99-0354 (La. App. 1 Cir. 6/23/00), 762 So.2d 1223, 1239, writ denied, 2000-2232 (La. 11/13/00), 775 So.2d 438.
We therefore amend the. trial court’s judgment and award, interest on the unpaid mineral royalty award from the date of full online production. We- amend the award of interest on the attorney’s fees award from the date awarded, December 21-, 2015.
*379 JjgPreviously-Paid Mineral Royalties
In their sole assignment of error, the plaintiffs argue the 'trial court erred in dismissing their claim to the previously-paid mineral royalties in the amount of $817,464.29.
The issue of whether the trial court erred in dismissing the plaintiffs’ claim to the previously-paid mineral royalties in the amount of $817,464.29 is addressed in the related appeal, 2016 CA 0171 consolidated with 2016 CA 0172. In that appeal, we affirm a judgment granting partial summary judgment in favor of the defendant, IP Petroleum, and dismissing with prejudice the plaintiffs’ claims for mineral royalties attributable to production on the IP Pet. PPCO No. .1 well prior to April 1, 2001, ie.,.the previously-paid mineral royalties. Therefore, the plaintiffs’ assignment of error is without merit, and for the sake of judicial efficiency, we pretermit any further discussion. We herein affirm the trial court’s dismissal of the previously-paid mineral royalties claim.
In a related error, IP Petroleum and International Paper assign. error to the trial court’s failure to provide that its dismissal of the plaintiffs’ claim to the previously-paid mineral royalties was with prejudice, and also assign error to the trial court’s failure to dismiss with prejudice any and all remaining claims of the plaintiffs, other than the intentional tort claim upon which relief was granted by the trial court on remand.
When a judgment is silent as to whether it is being dismissed with or without prejudice, the dismissal must be without prejudice. State ex rel. Dep’t of Soc. Serv. v. A.P., 2002-2372 (La.App. 1 Cir. 6/20/03), 858 So.2d 498, 503 n.10. A trial judge is vested with great discretion in dismissing a lawsuit with or without prejudice. Howard v. Lee, 50,366 (La.App. 2 Cir. 1/13/16), 185 So.3d 144, 153. Dismissal after trials on the merits, however, are tp.be with prejudice. Citizens Sav. Bank v. G & C Development, L.L.C., 2012-1034 (La. App. 1 Cir. 2/15/13), 113 So.3d 1085, 1088.
Here, the plaintiffs’ claims have been heard by the trial court in a full trial on the merits, as well as in a trial on remand. Therefore, the trial court abused its discretion in failing to provide that the dismissal of the plaintiffs’ claims, as well as any remaining claims, was with prejudice. We therefore amend the judgment of the trial court to provide that the dismissal of the plaintiffs’ claim for the previously-paid royalties is with prejudice. We likewise dismiss any remaining claims of the plaintiffs, with prejudice. lasCosts
In its December 21, 2015 judgment, the trial court assessed all costs of the proceedings against all defendants. Louisiana Code of Civil Procedure article 1920 provides that “[u]nless the judgment provides otherwise, costs shall be paid by the party cast,” and that.the trial court “may render judgment for costs, or any part thereof, against any party, as it may consider equitable.” Upon-review, a trial court’s assessment of costs can be reversed upon a showing of an abuse of discretion. Morrison v. Gonzalez, 602 So.2d 1104, 1107 (La. App. 1 Cir. 1992). When a prevailing party is taxed with the costs of litigation, it is usually because that party in some way incurred additional costs pointlessly or engaged in other conduct which justified an assessment of costs against it. Morrison, 602 So.2d at 1107. We find no abuse of the trial court’s discretion in assessing costs .against the parties cast in judgment, the defendants; therefore, we affirm the trial court’s assessment of costs.
DECREE
Based on the foregoing, we affirm the amount of the trial court’s damage award *380 for unpaid mineral royalties in favor of Quality Environmental Processes, Inc., Michael X. St. Martin, and Virginia Rayne St. Martin, in the proportions of thirty percent (30%) to Quality Environmental Processes, Inc., and seventy percent (70%) to Michael X. St. Martin and Virginia Rayne St. Martin, and against the defendants IP Petroleum Company, Inc. and International Paper Company, in the amount of $107,612.67, currently held in escrow by Montgomery Barnett, L.L.P., together with legal interest from the date of full online production until paid.
We affirm the trial court’s award of statutory penalties pursuant to La. R.S. 31:139 in favor of Quality Environmental Processes, Inc., Michael X. St. Martin, and Virginia Rayne St. Martin, in the proportions of thirty percent (30%) to Quality Environmental Processes, Inc., and seventy percent (70%) to Michael X. St. Martin and Virginia Rayne St. Martin, and against the defendants IP Petroleum Company, Inc. and International Paper Company, in the amount of $215,225.34, together with legal interest from the date of full online production until paid.
We affirm the trial court’s award of statutory attorney’s fees pursuant to La. R.S. 31:139 in favor of Quality Environmental Processes, Inc., Michael X. St. Martin, and Virginia Rayne St. Martin, in the proportions of thirty percent (30%) to Quality Environmental Processes, Inc., and seventy percent (70%) to Michael X. St. Martin and Virginia Rayne St. Martin, and against the defendants IP Petroleum Company, Inc. and International Paper Company, in the amount of |?3$138,350.46, which is twenty-five percent (25%) of the total of the awards for unpaid royalties, statutory penalties, and interest, as set forth above, together with legal interest from the date awarded until paid.
We amend the trial court’s award of damages for intentional tort in favor of Quality Environmental Processes, Inc., Michael X. St. Martin, and Virginia Rayne St. Martin, in the proportions of thirty percent (30%) to Quality Environmental Processes, Inc., and seventy percent (70%) to Michael X. St. Martin and Virginia Rayne St. Martin, and against the defendants IP Petroleum Company, Inc., International Paper Company, Montgomery, Barnett, Brown, Read, Hammond & Mintz, L.L.P., and John Y. Pearce, to $80,966.00, and affirm as amended.
We affirm the trial court’s judgment in favor of IP Petroleum Company, Inc. and International Paper Company, dismissing the royalty claim of the plaintiffs, Quality Environmental Processes, Inc., Michael X. St. Martin, and Virginia Rayne St. Martin in the amount of $817,464.29, and amend the judgment to provide that the dismissal is with prejudice.
We affirm the trial court’s denial of the peremptory exceptions raising the objection of res judicata filed by the defendants IP Petroleum Company, Inc., International Paper Company, Montgomery, Barnett, Brown, Read, Hammond & Mintz, L.L.P., and John Y. Pearce.
We affirm the trial court’s assessment of costs of the trial court proceedings against the defendants IP Petroleum Company, Inc., International Paper Company, Montgomery, Barnett, Brown, Read, Hammond & Mintz, L.L.P., and John Y. Pearce.
All other aspects of the December 21, 2015 judgment are affirmed. All costs of this appeal are assessed equally among the parties.
JUDGMENT AMENDED IN PART, AND AFFIRMED AS AMENDED; DENIAL OF EXCEPTIONS PLEADING RES JUDICATA AFFIRMED.
*381 McDonald, J., dissents in part and concur in part.
Pettigrew J., Concurs

. As a court of appeal, we are bound to follow the last expression of law of directed to us by the Louisiana Supreme Court. See Oliver v. Magnolia Clinic, 2011-2132 (La. 3/13/12), 85 So.3d 39, 44.

. In a related suit, Mandalay Oil & Gas, L.L.C. v. Energy Development Corporation, Michael X. St. Martin, Virginia Rayne St. Martin, and Quality Environmental Processes, Inc., bearing trial court docket number 132,981 (transferred to Division D of the 32nd JDC in Terrebonne Parish, presided over by Judge David W. Arceneaux), Mandalay Oil & Gas, L.L.C. initiated a concursus proceeding to determine the proper distribution of mineral *360 royalties attributable to production from a producing unit also located on the St. Martin Property. Although consolidated with 129,-412, the Mandalay Oil case was settled and dismissed.

. In Blue Line I, the parties jointly stipulated that the plaintiffs' claims against IP Petroleum for royalties accrued prior to June 29, 1997, were prescribed,

. Pure Resources, not a party to this suit, purchased IP Petroleum’s interest in the well in 2001. Pure Resources recompleted the well and produced minerals therefrom until the well was plugged and abandoned in 2002.

. In the Blue Line I suit, IP Petroleum filed a motion to consolidate that case, trial court docket number 129,412, assigned to Division D of the 32nd JDC in Terrebonne Parish, with the Blue Line II suit, trial court docket number 149,973, assigned- to Division B of the 32nd JDC in Terrebonne Parish. The plaintiffs opposed consolidation, and ultimately, the trial court denied IP Petroleum’s motion to consolidate the cases.

. See Quality Environmental Processes, Inc. v. I.P. Petroleum Co. Inc., 2013-1582, 2013-1588, 2013-1703 (La. 12/6/13), 129 So.3d 524.

, Montgomery Barnett, L.L.P. and Mr. Pearce also filed a declinatory exception raising the objection of lack of subject matter jurisdiction and a motion for summary judgment, both which were denied by the trial court.

. See Quality Environmental Processes, Inc. v. I.P. Petroleum Co., Inc., 2015-CW-0993, 2015-CW-1037 (La. App. 1 Cir. Aug. 10, 2015); see also Quality Environmental Processes, Inc. v. I.P. Petroleum Co., Inc., 2015-1580, 2015-1598 (La. 9111/15), 176 So.3d 1047.

.We note that before the trial court issued its judgment on remand in the instant suit, the trial court in the Blue Line I suit, which is the subject of the related appeal pending before this court, 2016 CA 0171 consolidated with 2016 CA 0172, dismissed an identical claim made by the plaintiffs to the previously-paid royalties, with prejudice.

. The defendants filed a motion, opposed by the plaintiffs, to combine the oral arguments in this appeal with the oral arguments in the related appeal—2016 CA 0171 consolidated with 2016 CA 0172—and to have the appeals heard by the same panel. If so ordered, the defendants requested the parties be permitted twenty-five minutes of argument time per side. We granted the motion in part to allow the two related appeals to be argued, before the same panel, but denied the defendants’ request to combine oral" arguments of the two appeals and to issue additional argument time. -.

. At the hearing on the defendants’ exceptions, counsel for IP Petroleum and International Paper conceded that if the plaintiffs’ tort claims were not barred,by res judicata, the claims would be barred by the law-of-the-case doctrine. On" appeal however, none of the defendants argued law-of-the-case doc■trine.as a bar to the plaintiffs’ tort claims.

. A concursus proceeding is not required by law, although it is a permitted procedure when a party is faced with competing or conflicting claims. See La. C.C.P. art. 4562; Quality I, 144 So.3d at 1026. The defendants argued they reasonably believed a concursus proceeding was unnecessary because the plaintiffs had already asserted their claim for unpaid royalties in the Blue Line I litigation. Quality I, 144 So.3d at 1026.