# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 19-93


**FRANK HAYES GLADNEY AND**

**MARGARET STELLA GLADNEY GUIDROZ**

**VERSUS**

**ANGLO-DUTCH ENERGY, L.L.C., ET AL.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. C-1-14
HONORABLE CRAIG STEVE GUNNELL, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**D. KENT SAVOIE**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, D. Kent Savoie, and Candyce G. Perret, Judges.


**AFFIRMED.**

Samuel E. Masur
Paul B. Simon
Gordon, Arata, Montgomery, Barnett, McCollam, Duplantis, & Eagan, LLC.
400 E. Kaliste Saloom, Suite 4200 (70508)
P.O. Box 81829
Lafayette, LA 70598-1829
(337) 237-0132
COUNSEL FOR DEFENDANTS/APPELLANTS:
    Anglo-Dutch Energy, L.L.C.
    Anglo-Dutch (Everest), L.L.C.

David Paul Bruchhaus
Mudd & Bruchhaus
410 E. College Street
Lake Charles, LA 70605
(337) 562-2327
COUNSEL FOR DEFENDANTS/APPELLANTS:
    Anglo-Dutch Energy, L.L.C.
    Anglo-Dutch (Everest), L.L.C.

Stephen D. Baker
Law Office of Stephen D. Baker
412 West University Ave., Suite 101
Lafayette, LA 70506
(337) 235-8298
COUNSEL FOR PLAINTIFFS/APPELLEES:
    Frank Hayes Gladney
    Margaret Ellen Guidrox Holford, in her capacity as independent
    executrix for the Estate of Margaret Stella Gladney Guidroz

Larry C. Hebert
William H. L. Kaufman
Ottinger Hebert, L.L.C.
1313 West Pinhook (70503)
P. O. Drawer 52606
Lafayette, LA 70505-2606
(337) 232-2606
COUNSEL FOR PLAINTIFFS/APPELLEES:
    Frank Hayes Gladney
    Margaret Ellen Guidrox Holford, in her capacity as independent
    executrix for the Estate of Margaret Stella Gladney Guidroz

**SAVOIE, Judge.**

In this matter, which initially arose out of a dispute over royalties owed under a mineral lease, Defendants, Anglo-Dutch Energy, L.L.C. and Anglo-Dutch (Everest), L.L.C. (hereinafter collectively "Anglo-Dutch"), appeal the trial court's judgment sustaining Plaintiffs' exception of res judicata and dismissing their reconventional demand, which asserted a claim for fraud. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The factual background of this case was set forth as follows by this court in connection with a prior appeal:

> On August 28, 2009, Plaintiffs [Frank Hayes Gladney and Margaret Stella Gladney[1]] granted a mineral lease over [their] land to Anglo-Dutch. That lease provided Plaintiffs were entitled to a one-fifth royalty on all oil, gas or other minerals reduced to possession by Anglo-Dutch from Plaintiffs' land. On February 14, 2012, Anglo-Dutch began a gas well on Plaintiffs' property which was completed on April 27, 2012. The reservoir and zone from which the well was to be produced were under the property of multiple landowners, not just Plaintiffs' land. Anglo-Dutch commenced sales of production from the gas well on May 18, 2012.
>
> On May 11, 2012, Anglo-Dutch began proceedings to apply for a compulsory drilling and production unit for the well in question by filing a "pre-application notice" with the Louisiana Office of Conservation. A drilling and production unit combines all the land over a reservoir into a single "unit" and allocates all the production from it to the various landowners. The Commissioner of Conservation determines the percentage of production allocated to each landowner. Generally, the percentage corresponds to the proportion of each owner's land in the unit.
>
> It is required that once proceedings to apply for a drilling and production unit are begun, a "conditional allowable" is issued for the well. A conditional allowable is a measure granted by the Commissioner of Conservation that authorized the operator of the well to extract a specific volume of production from a reservoir prior to the establishment of a unit. The conditional allowable ensures that owners of tracts within the unit receive their equitable share of production from the sale of minerals extracted. Anglo-Dutch applied for a conditional allowable on May 15, 2012[.]
>
> . . . .

---

[1] We note that, pursuant to an order dated December 22, 2017, Margaret Ellen Guidroz Holford, as independent executrix for Margaret Stella Gladney, was substituted as Plaintiff in this matter.

Anglo-Dutch's application for the conditional allowable was granted on May 17, 2012, and Anglo-Dutch began to produce the well the following day.

. . . . On January 23, 2013, Order No. 124-Y was issued establishing the unit. The Order specifically stated it "shall be effective on and after October 30, 2012."

In letters dated March 5, 2013[,] and March 18, 2013, counsel for Plaintiffs made demand on Anglo-Dutch for the alleged non-payment of royalties due. Plaintiffs contended despite the October 30, 2012 effective date of the Commissioner's Order, Anglo-Dutch refused to pay Plaintiffs their full one-fifth Lessor's royalty established by the Mineral Lease between the parties for production prior to October 30, 2012. Plaintiffs reasoned, after the October 30, 2[012] effective date, royalties could be paid on the "unit tract" basis, but until that date, they were entitled to their full one-fifth Lessor's royalty. It was admitted by all parties that as of October 30, 2012[,] moving forward, each owner within the unit was only entitled to the unit production in proportion to their surface acreage contained within the geographic confines of the Unit, and in Plaintiffs['] case, that was slightly over 78%.

Anglo-Dutch maintained Plaintiffs were not entitled to the full lease-basis royalty for pre-Unit production because the issuance of the conditional allowable required them to pay only on a unit-basis. It was their position the issuance of the conditional allowable replaced its obligations under the Mineral Lease between the parties to pay full lease-based royalties.

*Gladney v. Anglo-Dutch Energy, L.L.C.*, 16-468, pp. 3-5 (La.App. 3 Cir. 12/21/16), 210 So.3d 903, 904-05, *writ denied*, 17-365 (La. 4/13/17), 218 So.3d 120.

On January 2, 2014, Plaintiffs filed suit against Anglo-Dutch seeking damages in the amount of the alleged unpaid royalties, together with applicable penalties, interest, attorney fees, and costs. Anglo-Dutch filed an Answer asserting various affirmative defenses including "Fault of the Plaintiff/Implied Consent/Implied Contract," wherein Anglo-Dutch argued that Plaintiffs could have raised the royalty issue timely in connection with the conditional allowable proceedings, but rather "Plaintiffs let Defendants proceed, with actual or constructive knowledge of, and impliedly consenting to, Defendants' plans and actions for the well, the unit, and the payment of royalties therefrom."

Plaintiffs filed a Motion for Summary Judgment on November 3, 2015. Therein, they sought summary judgment rulings that (1) the subject lease obligated Anglo-Dutch to pay Plaintiffs a one-fifth royalty on production attributable to minerals extracted from Plaintiffs' lands; (2) Anglo-Dutch's refusal to pay Plaintiffs the one-fifth royalty was without reasonable cause, constituted a "substantial breach" of the lease, and entitled Plaintiffs to damages measuring double the amount of royalties due, interest, and attorney fees; (3) Anglo-Dutch's bad faith conduct "in wantonly withholding its consent to an agreement that would have permitted [Plaintiffs] to freely negotiate checks representing royalty sums not in dispute" was a breach of "Mineral Code Article 122's 'mutuality principle' and, as a result, [Plaintiffs] are entitled to dissolution" of the lease; and (4) Anglo-Dutch's breaches of the lease entitle Plaintiffs to an accounting for payment of production proceedings.

Anglo-Dutch filed an opposition to Plaintiffs' Motion for Summary Judgment arguing that because of the conditional allowable, it owed only "unit-basis" royalties through October 30, 2012. It alternatively argued that the actions of Plaintiffs' counsel in connection with the unitization proceedings created an issue of material fact as to what, if anything, Plaintiffs agreed to regarding the payment of royalties. Specifically, Anglo-Dutch argued that Plaintiffs' former counsel, Mr. Phillip Simon, who is now deceased, attended and represented Plaintiffs during the unitization proceedings, and was aware of, and did not object to, Anglo-Dutch's plan to escrow production revenue and pay it on a "unit-basis" once the unitization proceedings concluded. Anglo-Dutch further argued that Plaintiffs' delay in demanding "lease-basis" royalties until ten months after production, despite their counsel's representation during the unitization proceedings, potentially and unfairly resulted in a lucrative windfall of "lease-basis" royalties, plus punitive damages, attorney fees, interest, and other penalties should Plaintiffs' claim for lease cancellation be granted.

Anglo-Dutch also filed a Cross Motion for Summary Judgment on January 7, 2016, asking the trial court to dismiss Plaintiffs' claims because Anglo-Dutch owed "unit basis" royalties, rather than "lease-basis" basis royalties, in accordance with the conditional allowable, up until the date of unitization, that it fulfilled its obligation to pay "unit-basis" royalties, and Plaintiffs cannot show that they suffered damages as a result of Anglo-Dutch's alleged failures.

The trial court ruled in favor of Anglo-Dutch, granted its Motion for Summary Judgment, and dismissed Plaintiffs' claims against it. However, on appeal, a panel of this court reversed the trial court's summary judgment in favor of Anglo-Dutch after concluding that the relationship between Anglo-Dutch and Plaintiffs prior to October 30, 2012, was governed by the lease between the parties and Anglo-Dutch's obligation to pay Plaintiffs a one-fifth royalty on all production from the well was modified only by the unitization order's effective date. *Gladney*, 210 So.3d 903. This court, however, did not render summary judgment in favor of Plaintiffs.

On October 11, 2017, Plaintiffs filed a Motion for Partial Summary Judgment seeking unpaid "lease-basis" royalties totaling $558,690.28, plus contractual interest on that amount at a rate of legal interest plus two percent. Plaintiffs further specifically reserved their rights as to all other causes of action including "payment of the unpaid unit basis royalties accruing on or after October 30, 2012, statutory penalties and attorney's fees, prospective dissolution of the Mineral Lease on or after June 24, 2013[,] and restoration claims under the Mineral Lease."

In response to Plaintiffs' motion, Anglo-Dutch conceded that, in accordance with this court's ruling in *Gladney*, *Id.*, Plaintiffs were owed "lease-basis" royalties until the effective date of the unit and that $558,690.28 was the total amount owed; however, Anglo-Dutch argued that the amount of unpaid royalties was only $123,982.68. It further argued that the trial court should grant Plaintiffs' motion recognizing that they were owed "lease-basis," rather than "unit-basis," royalties prior to the effective date of

4

the unit, as a means of narrowing the issue, but that it should not designate a specific amount owed. Anglo-Dutch did not raise issues concerning actions of the Plaintiffs or their counsel during the unitization proceedings in opposition to Plaintiffs' motion. Ultimately, on January 19, 2018, the trial court signed a judgment granting Plaintiffs' motion as prayed for, including a reservation of Plaintiffs' rights, and designated the judgment as a final judgment in accordance with La.Code. Civ.P. art. 1915(B)(1). Anglo-Dutch did not appeal this judgment.

On March 5, 2018, Plaintiffs filed another Motion for Partial Summary Judgment seeking a judgment for unpaid "unit-basis" royalties between October 30, 2012, and January 31, 2013, in the amount of $250,535.66, and contractual interest at a rate of legal interest plus two percent. Plaintiffs also sought to specifically reserve their rights to pursue any other remedies available to them, including statutory penalties and attorney fees, an accounting, contractual interest and attorney fees, and prospective dissolution of the lease.

On April 3, 2018, Anglo-Dutch filed a Reconventional Demand against Plaintiffs asserting that it was entitled to damages and attorney fees for fraud in accordance with La.Civ.Code arts. 1953 and 1958. Specifically, Anglo-Dutch alleged that following the granting of the conditional allowable and commencement of production, pre-application hearings regarding Anglo-Dutch's pending unit application were held, and Plaintiffs' now-deceased former counsel, Mr. Philip Simon, who was an experienced oil and gas attorney, attended on Plaintiffs' behalf. According to Anglo-Dutch, during this time, it revised its original unit application that initially proposed a 493-acre unit with Plaintiffs to have 29.7% of production revenue, to a proposed 120-acre unit with Plaintiffs having 80% of the revenue from the revised unit. Therefore, according to Anglo-Dutch, Plaintiffs "benefited from the production during this interim period, and from Anglo-Dutch's efforts which garnered them a larger share of the eventual unit[,] which was approved, despite opposition from other landowners."

Anglo-Dutch's Reconventional Demand further provides as follows:

19.

In addition, following the October 4 pre-application conference, one of Anglo-Dutch's representatives, Scott Van Dyke ("*Mr. Van Dyke*") met with Mr. Simon individually and separately, to ensure his agreement with Anglo-Dutch's plans. Mr. Simon confirmed to Mr. Van Dyke that he understood the plan, including the plan to pay *all* the royalties on a unit-basis from the date of first production instead of a lease-basis. Mr. Simon not only voiced no opposition to the [sic] this plan, he expressly affirmed to Mr. Van Dyke that the Gladneys were agreeable to the payment of royalties on the unit-basis and, indeed, were excited by and appreciative of Anglo-Dutch's efforts on their behalf, which would result in them receiving approximately 80% of the unit.

. . . .

23.

Mr. Gladney and Mr. Simon, as the Gladneys' counsel, knew that the Well had been producing since May 18, 2012[,] and that royalty payments under the lease were not being paid. Yet, there was never any objection to the lack of payments until the March 5, 2013 letter, which letter was sent after Anglo-Dutch had secured a unit highly favorable to the Gladneys.

24.

As noted above, this more favorable unit was based on the Well's production history during the period after the conditional allowable was issued and before the unit was issued. Anglo-Dutch produced from the Well during this period in reliance on the Gladneys' (mis)-representations, through Mr. Simon, that they concurred with Anglo-Dutch's plan for the unit and Well, including the payment of royalties on a unit-basis from the date of first production.

25.

*But for* the Gladneys' (mis)-representations, Anglo-Dutch would not have produced from the Well during this time period until the unit order was issued, and would not have applied for the revised unit that increased the Gladney's share of production from a little less than 30% to almost 80%, to the Gladneys' tremendous detriment. In other words, the Gladneys' intentional misrepresentations prevented Anglo-Dutch from mitigating its damages and resulted in this litigation.

26.

The Gladneys' misrepresentations also resulted in Anglo-Dutch paying double royalties during the period from first production to the date of unitization: *first*, to the Gladneys' [sic] on a lease-basis from the date of first production to the date of unitization; and *second* to the other landowners in the eventual unit on a unit-basis from the date of first

6

production to the date of unitization. Anglo-Dutch would have shut in the Well and *not* produced during this period or sought a royalty escrow or similar agreement from all the landowners in the unit to produce during this period. However, in reliance on the Gladneys' misrepresentations, Anglo-Dutch did not shut the Well in and wait on the unit order, or seek a royalty escrow or similar agreement.

. . . .

28.

The Gladneys' consent to the plans set forth by Anglo-Dutch[,] which stipulated that royalty payments would be paid to landowners on a unit-basis from the date of first production was a misrepresentation or suppression of the Gladneys' true intent amounting to fraud as set forth in [La.Civ.Code art.] 1953.

29.

As they intended, the Gladneys' misrepresentations were relied upon by Anglo-Dutch and resulted in a loss to Anglo-Dutch as described above, including the payment of double royalties, the costs incurred in this action, and attorneys' fees and professional fees, in a final amount to be demonstrated at trial.

30.

Anglo-Dutch is entitled to, and the Gladney's [sic] are liable for, damages for Anglo-Dutch's loss resulting from the Gladney's fraud— without limit by the economic loss rule—plus attorney's fees pursuant to [La.Civ.Code. art.] 1958, pre- and post-judgment interest, and costs.

On April 6, 2018, Anglo-Dutch filed an opposition to Plaintiffs' March 5, 2018 Motion for Partial Summary Judgment regarding unpaid "unit-basis" royalties. Therein, it stated "there was and is no dispute that Anglo-Dutch owes these royalties to plaintiffs." Anglo-Dutch further conceded that the trial court's prior ruling as to the applicability of interest from this period was binding. However, according to Anglo-Dutch, its Reconventional Demand represented a potential offset of any amount owed to Plaintiffs, and therefore, Plaintiffs should not be awarded a money judgment until all claims were resolved.

Anglo-Dutch also filed a Motion for Partial Summary Judgment seeking the dismissal of Plaintiffs' statutory penalties claims, to which Plaintiffs filed a Cross Motion for Summary Judgment.

Plaintiffs filed various exceptions to Anglo-Dutch's Reconventional Demand, including res judicata, wherein Plaintiffs argued that the Reconventional Demand was barred by prior final judgments rendered in this action. Plaintiffs also argued that Anglo-Dutch's fraud claim, to the extent it arose in tort, was untimely and barred by prescription. Plaintiffs also asserted an exception of no cause of action. They additionally filed a Motion for Partial Summary Judgment for Contractual Attorney fees.

Plaintiffs' exceptions, as well as the Cross Motions for Summary Judgment regarding statutory penalties, and Plaintiffs' Motion for Summary Judgment regarding contractual penalties, were heard September 25, 2018. Thereafter, the trial court issued a judgment signed October 29, 2018, sustaining Plaintiffs' exception of res judicata, dismissing Anglo-Dutch's reconventional demand with prejudice, and denying as moot the remaining exceptions.[2]

Anglo-Dutch appeals the trial court's judgment sustaining Plaintiffs' exception of res judicata.

## ASSIGNMENTS OF ERROR

On appeal, Anglo-Dutch asserts the following as assignments of error:

1. Res judicata does not apply based on judgments (even partial judgments certified as final) in the same case[,] but requires a separate, "second suit." . . . Accordingly, the district court erred in sustaining the Exception of res judicata based on two prior adjudications in this case—this Court's Previous Decision and the district court's Prior Judgment.

2. The district court erred in sustaining the Exception of res judicata because the claim in the Reconventional Demand does not arise out of the same transaction or occurrence as the "first action," as this Court's Previous Decision and the district court's Prior Judgment, which were resolved on summary judgment based on an expressly limited and narrow claim of what was due under the clear and unambiguous terms of the Lease; and no other doctrine, such as law of the case, was considered or properly applies.

---

[2] The trial court also rendered separate judgments on the parties' partial summary judgment motions, including a judgment granting Plaintiffs' motion with respect to contractual attorney fees, as well as a judgment granting Anglo-Dutch's motion and dismissing Plaintiffs' claims seeking statutory penalties. Those judgments are not under review in connection with the instant appeal.

# LAW AND DISCUSSION

"The res judicata effect of a prior judgment is a question of law that is reviewed de novo." *Fogleman v. Meaux Surface Prot., Inc.,* 10-1210, p. 2 (La.App. 3 Cir. 3/9/11), 58 So.3d 1057, 1059, *writ denied,* 11-712 (La. 5/27/11), 63 So.3d 995 (quoting *Morales v. Par. of Jefferson,* 10-273, p. 6 (La.App. 5 Cir. 11/9/10), 54 So.3d 669, 672). However, the trial court's factual determinations are reviewed for manifest error. *Id.* Because the trial court did not express any factual findings in connection with its ruling, we will conduct a de novo review.

Louisiana Revised Statues 13:4231, which sets for the elements of res judicata, states as follows:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
>
> (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
>
> (2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
>
> (3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

For purposes of res judicata, comment (d) to La.R.S. 13:4231 provides that a final judgment "disposes of the merits in whole or in part. . . . [T]he preclusive effect of a judgment attaches once a final judgment has been signed by the trial court and would bar any action filed thereafter unless the judgment is reversed on appeal."

> Louisiana's original doctrine of *res judicata* was based on a presumption of correctness rather than an extinguishment of a cause of action. A decided case precluded a second suit only if it involved the same parties, the same cause and the same object of demand as the prior suit. *Terrebonne Fuel and Lube, Inc. v. Placid Refining Company,* 95-0654 (La. 1/16/96), 666 So.2d 624. However, under La. R.S. 13:4231, as amended

9

in 1991, a second action would be barred because it arises out of the occurrence which was the subject matter of the prior litigation. The central inquiry is not whether the second action is based on the same cause of action, but whether the second action asserts a cause of action which arises out of the transaction or occurrence which was the subject matter of the first action. *Terrebonne Fuel and Lube, Inc. v. Placid Refining Company*, *supra*.

After a final judgment, *res judicata* bars relitigation of any subject matter arising from the same transaction or occurrence of a previous suit. This promotes judicial efficiency and final resolution of disputes. A judgment determining the merits of a case is a final judgment. La. C.C.P. art. 1841; *Tolis v. Board of Supervisors of Louisiana State University*, 95-1529 (La. 10/16/95), 660 So.2d 1206.

*Tate v. Prewitt*, 33,895, p. 4 (La.App. 2 Cir. 9/27/00) 769 So.2d 800, 803, *writ denied,* 00-3203 (La. 1/26/01), 781 So.2d 1265.

In the instant matter, Plaintiffs argued, and the trial court apparently agreed, that this court's ruling in *Gladney*, 210 So.3d 903, which reversed the trial court's initial summary judgment granted in favor of Anglo-Dutch, and/or the trial court's partial final summary judgment rendered in favor of Plaintiffs finding Anglo-Dutch liable for $558,690.28 in "lease-basis" royalties through the effective date of the unit, plus contractual interest on that amount, are res judicata as to Anglo-Dutch's Reconventional Demand.

On appeal, Anglo-Dutch first argues that the doctrine of res judicata does not apply to its Reconventional Demand because the Reconventional Demand was filed in the same lawsuit as the prior judgments at issue, rather than a second, separate lawsuit. We disagree that the applicability of res judicata is dependent on the filing of a second lawsuit.

Initially, we note that there is no second lawsuit requirement contained in La.R.S. 13:4231, which governs the applicability of res judicata. Rather, La.R.S. 13:4231 provides that valid and final judgments are, in certain instances, conclusive between the same parties as to certain *causes of action* and certain issues, as enumerated therein. Further, while La.R.S. 13:4231(2) states that a judgment in favor of a defendant

10

extinguishes all causes of action existing at the time of the final judgment arising out of the same transaction or occurrence and "bars a subsequent action" on those causes of action, there is no requirement that the referenced *action* be filed in a separate *lawsuit*. Rather, the Louisiana Code of Civil Procedure allows certain actions, including reconventional demands and other demands incidental to the principal action, to be asserted in the principal action, and it also allows causes of action to be asserted as a defense, rather than a separate lawsuit. *See* La.Code Civ.P. arts. 421, 424, 1031. Further, La.Code Civ.P art. 425 expressly requires that "[a] party shall assert all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation."

In addition, the Louisiana Supreme Court in *Tolis*, 660 So.2d 1206, found that, under the doctrine of res judicata, a final judgment barred an action filed in the same lawsuit wherein the final judgment was rendered. In *Tolis,* the trial court orally granted a summary judgment in favor of Plaintiffs, but there was a delay in signing the judgment. Meanwhile, the trial court overruled exceptions filed by Defendants, and Defendants sought supervisory writs from the court of appeal. The court of appeal granted writs, maintained Defendants' exceptions, and dismissed Plaintiffs' claims. Thereafter, the trial court signed a summary judgment in favor of Plaintiffs, and Defendants appealed. The court of appeal affirmed, declining to apply the law of the case doctrine to the prior writ decision, and found that the prior writ decision could be reconsidered on appeal. The supreme court, however, reversed the summary judgment in favor of the plaintiffs, finding that the appellate court's writ judgment was res judicata and precluded the summary judgment. The supreme court stated:

> The court of appeal confused the doctrine of law of the case in cases involving interlocutory judgments with the doctrine of res judicata in cases involving final judgments.

> When a court renders a judgment that decides the merits of the case in whole or in part, the judgment is a final judgment. La.Code Civ.Proc. art. 1841. A final judgment may be rendered by either a trial court or an

11

> appellate court, and a judgment by an appellate court that decides the merits of the case is a final judgment, regardless of whether the case reached the appellate court on appeal or on supervisory writs.
>
> . . . .
>
> The intermediate court's judgment of March 29, 1994[,] dismissed plaintiffs' action in its entirety with prejudice, thereby deciding the merits of the case. That judgment was therefore a final judgment, which became res judicata and conclusive between the parties when it was rendered, although subject to modification by a higher court on direct review. La.Rev.Stat. 13:4231.

*Tolis*, 660 So.2d at 1206-07.

Similarly, in *First National Bank, Bienville Parish v. Smith*, 29,350 (La.App. 2 Cir. 4/2/97), 691 So.2d 355, the court found that a prior summary judgment, which had become final, was res judicata, and therefore, barred certain issues Defendants later raised in the same lawsuit in defense of Plaintiffs' exceptions to Defendants' Reconventional Demand.

In support of their argument that res judicata requires a second lawsuit, Anglo-Dutch relies on a statement in *Quality Environmental Processes, Inc. v. IP Petroleum Co., Inc.*, 16-230, p. 10 (La.App. 1 Cir. 4/12/17), 219 So.3d 349, 365, *writ denied*, 17-915 (La. 10/9/17), 227 So.3d 833, indicating that "[a]t its core, *res judicata* envisions a second suit. Here, there is no second suit, merely judgments . . . within the same suit." The *Quality* court then found that the law-of-the-case doctrine, as opposed to res judicata, was the applicable procedural principle at issue. However, in *Quality*, and unlike in the instant matter, there was not a second claim, action, and/or lawsuit to which Defendants were seeking to apply res judicata. Rather, after the supreme court had dismissed Plaintiffs' claims arising under the Louisiana Unfair Trade Practices Act (LUTPA), but otherwise remanded the matter, Defendants, on remand, filed an exception of res judicata arguing that the "supreme court's dismissal of the plaintiffs' LUPTA claims . . . barred the plaintiffs from asserting any *further* tort claims related to, or arising from the same conduct that was the subject of the supreme court's

dismissal of the LUTPA claims." *Id.* at 362 (emphasis added). The court of appeal recognized that under La.R.S. 13:4231, "[t]he chief inquiry is whether the second *action* asserts a cause of action that arises out of the transaction or occurrence that was the subject matter of the first action[,]" and ultimately concluded that there was no second action at issue in that case. *Id.* at 365 (emphasis added). Therefore, we decline to find that *Quality* holds, as Anglo-Dutch suggests, that the applicability of res judicata requires the filing of a separate lawsuit. Anglo-Dutch's first assignment of error lacks merit.

In its second assignment of error, Anglo-Dutch argues that its Reconventional Demand does not arise out of the same transaction or occurrence as the prior summary judgments at issue. It argues that that the prior judgments address only the issue of what was owed under the mineral lease, whereas its Reconventional Demand asserts a claim for fraud based upon allegations of intentional misrepresentations made in connection with the unitization proceedings. Anglo-Dutch also notes that the summary judgments at issue specifically reserved other claims not addressed therein.

Plaintiffs argue, however, that Anglo-Dutch's fraud claim and supporting allegations asserted in its Reconventional Demand are not based upon a separate transaction or occurrence, but rather are defenses to Plaintiffs' claims for royalties owed under the mineral lease. Therefore, according to Plaintiffs, the January 19, 2018 summary judgment, which specifically ajudicates the issue of the amounts owed under the mineral lease, bars Anglo-Dutch's fraud claim.

Anglo-Dutch's Reconventional Demand asserts a contractual fraud claim arising under La.Civ.Code art. 1953 and expressly seeks damages under La.Civ.Code. art. 1958. Anglo-Dutch made the contractual nature of its claim clear in its opposition to Plaintiffs' exceptions filed in the trial court, wherein it stated its "Reconventional Demand expressly sets forth that it is rooted in contract, *not tort*, as it states a claim for 'fraud as set forth in [La.Civ.Code] art. 1953.'" (emphasis added). Anglo-Dutch further stated

13

in opposition to Plaintiffs' exceptions that it "has never claimed, and does not claim here, that the Gladneys' mineral lease was amended or modified, by the parties' interactions or otherwise."

Louisiana Civil Code article 1953[3] defines fraud as one of the vices of consent to a contract, which may be grounds upon which to rescind a contract. Louisiana Civil Code article 1958 provides that "[t]he party against whom rescission is granted because of fraud is liable for damages and attorney fees." Therefore, Anglo-Dutch's contractual fraud claim under La.Civ.Code arts. 1953 and 1958 is necessarily dependent upon a finding that a contract should be rescinded because of fraud. The only contract at issue in this matter is the mineral lease under which Plaintiffs claim they are owed "lease-basis royalties" through the effective date of the unitization order – i.e. royalties contemplated by the lease, and not "unit-basis" royalties in accordance with the conditional allowable. The trial court, however, in connection with the January 19, 2018 partial final summary judgment, has already held that the mineral lease obligates Anglo-Dutch to pay "lease-basis," and not "unit-basis," royalties through the effective date of the unitization order and rendered judgment in favor of Plaintiffs for the specific amount owed, as well as interest contemplated by the lease.

Therefore, we conclude that Anglo-Dutch's Reconventional Demand necessarily arises out of the same transaction or occurrence at issue in the trial court's prior adjudications and is barred by the doctrine of res judicata. We agree with Plaintiffs-Appellees that Anglo-Dutch's Reconventional Demand, is "inexorably entangled with the adjudication of [Plaintiffs'] principal demand premised upon a determination of Anglo-Dutch's payment obligations" under the mineral lease.

---

[3] "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." La.Civ.Code art. 1953.

14

## **DECREE**

For the reasons set forth above, the trial court's dismissal of Anglo-Dutch's Reconventional Demand is affirmed. Costs of this appeal are assessed to Appellants, Anglo-Dutch Energy, L.L.C. and Anglo-Dutch (Everest), L.L.C.

**AFFIRMED.**