JANVIER, Judge.
On the morning of September 21, 1946, Thomas P. Lewis was driving his 1942 Ford station wagon down St. Charles Avenue in New Orleans, and as he attempted to cross the intersection of Louisiana Avenue, the station wagon ran into the side of a large five-ton truck of the defendants, George Wm. Groetsch and James M. Groetsch, who conduct a wholesale grocery business in New Orleans under the name of 'G. & J. Groetsch Wholesale Grocers. The truck was on Louisiana Avenue, going towards the Mississippi River. The station wagon was damaged, it is conceded to the extent of $371.05.
There was a traffic semaphore light at that corner, and at the time there was a downtown bound streetcar of the New Orleans Public Service, Inc., standing on the neutral ground of St. Charles Avenue, facing towards Louisiana Avenue.
The defendants carried a policy of public liability and property damage insurance which had been issued by Employers’ Liability Assurance Corporation, Ltd.
Lewis brought this suit against the said partners and the said insurance company, praying for solidary judgment in the sum of $371.05 and alleging that the accident had been caused solely by negligence on the part of the driver of the grocery truck in the following particulars :
“1. In driving at an excessive rate of speed while crossing an intersection;
“2. In crossing the intersection on a red light;
“3. In violation of the Traffic Ordinances in the City of New Orleans;
“4. In failing to keep a proper lookout ahead;
“5. In failing to have his vehicle under proper control ;
“6. In failing to accord the right of way tó petitioner’s vehicle by virtue of his proceeding on a green light traffic signal.”
Defendants admit their respective capacities but deny that there was any negligence on the part of the driver of the truck, and aver that the collision was caused by the negligence of Lewis', himself, and they aver that, in the alternative that if ⅛ appear that there was any negligence in the driver of the truck, then that the proximate cause of the accident was the contributory negligence of Lewis. They make the following charges of negligence against Lewis:
“(1) Failing to accord the right-of-way to defendant’s truck by virtue of its having lawfully entered said intersection on a green traffic control light;
“(2) Driving his said vehicle at an unlawful and excessive rate of speed in excess of thirty miles per hour, along a wet and slippery street, in violation of Article V of Section 3 of Ordinance No. 13,702 C. C.S. of the City of New Orleans;
“(3) Failing to keep a proper lookout prior to entering said intersection and in entering said intersection while his view of traffic from the left, and lawfully in said intersection, was screened and obscur'ed by a street-car that was stopped on the netfiral *398 ground along St. Charles Avenue, all in violation of Article. Ill Section 3(a) of Ordinance No. 13,702 C.C.S. of the City of New Orleans;
“(4) Failing to have said vehicle under control;
“(5) Failing to use due caution and care under the circumstances then existing.”
From a judgment for plaintiff as prayed for, defendants have appealed.
The record leaves no doubt that when the Lewis station wagon entered the intersection, the traffic semaphore light facing it showed green and the judge a quo so found, stating, during the trial, that he did not believe the driver of the other vehicle, the truck, who had said that as his truck entered the intersection, the light facing it was green.
Counsel for defendants concede that we cannot hold otherwise than that at the time the station wagon entered the intersection the light facing it was green, but they argue that the record shows that this light had turned to green after the truck had already entered the lake side intersection and that Lewis drove his car into that part of the intersection in which the collision occurred just as the light facing him had turned to green and without allowing sufficient time for the truck, which they say was already in the intersection, to complete the crossing.
Counsel for plaintiff, on the other hand, deqlare that he did not enter the intersection until several seconds after the light had changed and after ample time had been afforded to any vehicle which might be in the intersection to complete the crossing.
The principle which defendants invoke is that which we followed in Thomas v. Roberts, 144 So. 70, which has been approved many times since, and which had, in fact, been recognized before we rendered that decision. It is simply this; that a motorist, even when he enters an intersection on a favorable light may not blindly drive his car into another which has not yet cleared the intersection but must use such care .as an ordinarily careful driver would use under such circumstances. In Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292, 294, the Supreme Court recognized this principle saying:
“It can not and will not be disputed that a motorist, who recklessly and without exercising some degree of caution enters an intersection on a favorable light, is not free from negligence if he collides with another motorist who enters an intersection on an unfavorable light. And it can not and will not be disputed that a motorist can not, in the face of imminent danger, rely upon the right of way accorded him by law. * * * »
In Tooke et al. v. Muslow Oil Co. et al., 183 So. 97, 101, the Court of Appeal for the Second Circuit said:
“Motorists who approach intersections are charged with the duty to vigilantly watch for pedestrians and vehicles caught therein between light changes, and are not warranted in exclusively depending upon a favorable light for the safety of their movements.”
Counsel for plaintiff find no fault with this doctrine but contend that it has no application here for the reason that when plaintiff entered the intersection the light had been green for several seconds and thus there had been afforded to any vehicle, which may have entered just as the light was about to turn, an ample opportunity to complete the crossing. And they argue too that since the view of plaintiff was obstructed by the stationary streetcar, and since ample opportunity had been afforded others to clear the crossing after the light had changed, plaintiff was under no obligation to do more than enter the intersection at a reasonable speed and was not required to stop and peer cautiously around the end of the streetcar to make absolutely certain that there was no other vehicle about to cross in front on him. They also point to the case of Kientz v. Charles Dennery, Inc., and say, as was also said in that case, that while it is true that a motorist, merely because he has a favorable light, may not throw all precautions to the winds [209 La. 144, 24 So.2d 294], * * * “it also can not be disputed that under the traffic light system a motorist, who is proceeding on a proper signal, should not be held to the *399 same degree of care and vigilance as if no such system prevailed. * * * ”
We think that if between the time in which the light became favorable to plaintiff and the time at which he entered the intersection there had elapsed sufficient time for the complete clearing of the crossing by any vehicle which may have been caught in the intersection by the changing light, then Lewis was justified in assuming that there was no other car in the intersection because there was no reason for him to anticipate that some other driver would enter the intersection after the light had changed to red. Had the streetcar not blocked plaintiff’s vision to his left, it is possible that we would feel that he should have noticed the truck even though it may have entered in the face of an unfavorable light, but since his view was blocked his failure to see the on-coming truck was not negligence on his part. The view which we take of the matter makes it necessary that we determine whether plaintiff entered the intersection just as the light turned to green or whether he did not enter until after it had changed to green for several seconds.
The only positive testimony we have on this point is given by plaintiff, himself, and by his two witnesses, Mr. and Mrs. Fenwick Eustis, who were driving down St. Charles Avenue in their car a short distance behind the Lewis station wagon. Plaintiff says that when he was about a block away from the intersection: “I saw it was orange." He follows this with the following statement:
“When I saw it was orange, I slowed down, took my foot off the gas so that it would get a chance to turn green without me coming close to the corner. When I reached approximately the middle of the block it turned green.”
He says that he continued and entered the intersection at a speed of between 20 and 25 miles per hour. When asked whether he had looked to the left before entering the intersection, he said:
“I looked to the left and right. I didn’t see anyone approaching from the right and' I had had a green light for roughly half a block and anybody who was going to come across on the light would have been long past and I didn’t see anyone crossing the street so I went on through.”
Mrs. Eustis says that when she first noticed the light, it was green and that she was then about the middle of the block, and that the station wagon of plaintiff was “not very far ahead.” Mr. Eustis says that when he was about a block away he saw that the light was green and that at that time the station wagon was about 150 feet ahead of his car.
All of this evidence leads to the conclusion that the light facing Lewis turned to green when he was some distance from the crossing, and that several seconds elapsed between the time at which it turned to green and the time at which he entered the intersection. There is only one thing about the testimony of plaintiff which throws doubt on the accuracy of his estimates of the various distances and that is that in spite of the fact that he says that when he was an entire block away the light changed to orange, he says that because he wanted to be sure that it would change to green before he reached the crossing, he reduced his speed. It is well known that when one of these semaphore lights changes to orange or amber that color remains for a very few seconds, and that a driver who is an entire block away, when the light is amber, need not reduce his speed at all because his car could not traverse the entire block before the light has changed to green. This thought leads to the belief that it is probable Lewis was much nearer to Louisiana Avenue than he says he was when the light changed to green. Still, in view of the positive testimony found in the record, we must conclude, as the district judge obviously did, that when Lewis entered the intersection the light facing him had been green for a reasonable time. If so, then the truck must have entered after the light facing it had turned to red, and it follows that there had elapsed a sufficient time for the clearance of the crossing by any vehicle which may have entered it on a favorable light. It follows also that since plaintiff’s view was obstructed, he was not at fault in failing to see that the truck was about to dash across in front of him. In entering the intersection at a reasonable speed several seconds after the light had become favor *400 able, plaintiff did all that the dictates of prudence required of him.
The judgment appealed from is affirmed at the cost of appellants.
Affirmed,