**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2020 CA 0841 c/w 2020 CA 0842

A.B.S. SERVICES, INC.

VERSUS

JAMES CONSTRUCTION GROUP, L.L.C. & THE CONTINENTAL
INSURANCE COMPANY

Judgment rendered___**JUL 2 2 2021**___

* * * * *

On Appeal from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
No. C541834 c/w C542671

The Honorable Wilson Fields, Judge Presiding

* * * * *

Murphy J. Foster, III
Jacob E. Roussel
John T. Andrishok
Baton Rouge, Louisiana

Attorneys for Defendant/Appellant
James Construction Group, L.L.C.

Henry D.H. Olinde, Jr.
Scott E. Mercer
Douglas S. Smith, Jr.
Baton Rouge, Louisiana

Attorneys for Plaintiff/Appellee
A.B.S. Services, Inc.

* * * * *

**BEFORE: McDONALD, HOLDRIDGE, AND PENZATO, JJ.**

**HOLDRIDGE, J.**

In this breach of contract case, James Construction Group, L.L.C. (James), appeals a judgment awarding A.B.S. Services, Inc. (ABS) attorney's fees in the amount of $2,394,940.05 and taxing James with costs in the amount of $45,970.01. ABS answered the appeal, seeking to increase the attorney's fee award and a modification of the date from which legal interest is to run on the amounts awarded to it. ABS also asks this court to award additional attorney's fees incurred in connection with this appeal. For the following reasons, we amend the attorney's fee award, affirm the cost assessment, and deny all relief sought by ABS in its answer to the appeal.

## BACKGROUND

Some of the background forming the basis of this appeal can be gleaned from this court's *en banc* decision in **ABS Services, Inc. v. James Construction Group, L.L.C.**, 2016-0705, 2016-0706 (La. App 1st Cir. 12/21/18), 269 So.3d 723 (*per curiam*), writ denied, 2019-0473 (La. 6/17/19), 273 So.3d 1212. The underlying lawsuit, which serves as the basis for the attorney's fee award challenged in this appeal, arose out of a road construction project on Interstate 10 in East Baton Rouge Parish, Louisiana (the "Project"). The owner of the Project, the Louisiana Department of Transportation and Development (DOTD) contracted with James to be the general contractor on the Project. James subcontracted a portion of the work to ABS, which included the installation of retaining walls for the Project. Id. at 726.

There were a number of complications and problems impacting the construction of the retaining walls, including delays in construction and materials, geotechnical problems, and inspection issues. ABS began working on the Project in April 2004. The relationship between ABS and James deteriorated and by letter

2

dated July 27, 2005, ABS notified James that it was in material breach and default of its subcontract with ABS. ABS claimed that it sustained over 1.6 million dollars in damages as a result of James's breach of contract. James and ABS were unable to resolve their differences, and on August 9, 2005, and before the retaining walls were completed, ABS demobilized from the Project. Id. at 726-728.

On March 28, 2006, ABS filed the underlying lawsuit against James and its surety, The Continental Insurance Company, claiming that James breached the subcontract. ABS sought to recover damages, including but not limited to, increased costs for labor, equipment, overhead, and lost profits, in addition to interest, attorney's fees, court costs, and expenses. Id. at 728.

During the course of the litigation, numerous additional defendants were added to the litigation, including ABMB Engineers, Inc. (ABMB) and Professional Services Industries, Inc. (PSI). Also, numerous cross-claims, reconventional demands, and third-party demands were filed thereafter, including a claim by James against ABS for breach of contract. In 2012, ABS amended its petition to assert direct claims against DOTD and three suppliers of materials used to construct the retaining walls. Id. at 728-29.

In the underlying litigation, ABS did not seek recovery from James for unpaid invoices for work ABS performed on the Project pursuant to La. R.S. 9:2784. Id. at 750 (Whipple, C.J. concurring and dissenting in part). As discussed more fully herein, Paragraph A of La. R.S. 9:2784, commonly referred to as Louisiana's Prompt Pay Statute, requires a contractor to promptly pay a subcontractor monies received by the contractor from the owner of a project for the subcontractor's work on that project. Although ABS did not assert a claim against James under Paragraph A of La. R.S. 9:2784, it sought to recover penalties and attorney's fees provided for in Paragraph C of La. R.S. 9:2784, which permits the

3

subcontractor to recover, in addition to the payment provided for in the statute, penalties and attorney's fees where the contractor, without reasonable cause, failed to make any payment to the subcontractor within 14 days of receipt of payment from the owner. Id. at 757-58.

A jury trial was held from August 31 through September 11, 2015. Id. at 729. During that trial, Anthony Bertas, ABS's owner, testified that James had paid ABS for all invoices or pay applications, less the retainage fee pursuant to the subcontract, totaling $1,969,772.00, at the time ABS left the Project. Id. at 742, fn. 2. There was some conflicting testimony as to whether ABS was paid a final invoice submitted by ABS to James after ABS left the Project; Mr. Bertas testified that this final invoice had not been paid by James. Id. at 768 (Guidry, J., concurring).

After the conclusion of the trial, the jury returned a verdict finding that James had breached its subcontract with ABS and that ABS did not breach that contract. In response to questions posed on a jury verdict form, the jury determined that ABS had sustained damages in the amount of $3,174,160.00 as a result of James's breach of the contract. The jury found that James was liable to ABS for penalties and attorney's fees in addition to the damages that had been awarded. The jury awarded a 5% penalty percentage to ABS. The jury further determined that DOTD, ABMB, and PSI were negligent and apportioned 50% fault to DOTD, 25% fault to ABMB, and 25% fault to PSI. The jury determined that ABS was entitled to $3,174,160.00 for the damages it sustained as a result of the parties' negligence. Id. at 730.

On September 28, 2015, the trial court adopted the jury verdict form as its judgment. Numerous post-trial motions were filed, resulting in a new final judgment signed by the trial court on December 1, 2015. In the December 1, 2015

4

judgment, James was ordered to pay ABS $3,174,160.00 plus judicial interest from the date of judicial demand (March 28, 2006) until paid; Continental was cast in solido with James to ABS for the full amount of this award; DOTD was cast in solido with James for the sum of $1,587,080.00; and ABMB and PSI were each cast in solido with James in the amount of $793,540.00. The judgment ordered James to pay ABS, pursuant to La. R.S. 9:2784, penalties in the amount of $158,708.00 "plus reasonable attorney's fees" along with judicial interest from the date of the judgment until paid. Finally, the judgment cast James, Continental, DOTD, PSI, and ABMB liable in solido for all costs of the proceedings, including reasonable expert witness fees, with judicial interest running from the date of the judgment until paid. Id. at 730-31.

James, Continental, DOTD, ABMB, and PSI suspensively appealed the December 1, 2015 judgment. This court overruled various peremptory exceptions raised by James and DOTD, affirmed James's liability to ABS for damages for breach of contract, and affirmed the ruling that ABS did not breach the contract. However, this court was unable to arrive at a majority consensus as to the amount of damages to which ABS was entitled. Because this court could not reach a consensus as to the amount of the damages, the portion of the December 1, 2015 judgment, ordering James to pay ABS the sum of $3,174,160.00, plus judicial interest from the date of the judicial demand, stood. Additionally, because there was no majority consensus on the issues raised on the remaining portions of the trial court's judgment on the merits, there was no executable majority as to those portions of the judgment. Except as set forth specifically in the *per curiam* opinion, the remainder of the trial court's judgment stood, including that portion of the judgment ordering James to pay ABS penalties in the amount of $158,708.00 representing 5% of the total damages awarded by the jury to ABS for James's

5

breach of contract, along with reasonable attorney's fees pursuant to La. R.S. 9: 2784. Costs of the appeal were assessed to DOTD, James, Continental, ABMB, and PSI. Id. at 739.

This court denied James's application for a rehearing, and on June 17, 2019, the Louisiana Supreme Court denied writs in the case. **ABS Services, Inc. v. James Construction Group, L.L.C.**, 2019-0473 (La. 6/17/19), 273 So.3d 1212. On July 23, 2019, James paid ABS damages in the amount of $5,395,593.70 and penalties in the amount of $185,624.22, representing the amounts James was cast in the 2015 judgment plus judicial interest.

On June 25, 2019, ABS filed a motion to fix attorney's fees and costs. ABS sought to recover $3,216,943.75 from James in attorney's fees for work performed in the underlying litigation. ABS calculated this amount based on the total hours worked by its attorneys in the 13.5 years of litigation (7,435.10 hours) at a rate of $350.00 per hour for partner attorneys and $300.00 per hour for associate attorneys, for a total attorney's fee award of $1,819,090.00. ABS also sought to recover paralegal fees in the amount of $726,543.75, representing 5,812.35 hours of paralegal time at $125.00 per hour. In its motion, ABS asserted that the December 1, 2015 judgment, which awarded penalties and reasonable attorney's fees against James for James's violation of La. R.S. 9:2784 is "final and definitive." According to ABS, La. R.S. 9:2784 gave it the right to recover "reasonable attorney fees for the collection of the payments due" from James to ABS. ABS argued that its request for attorney's fees was eminently reasonable in light of the factors set forth in Rule 1.5(a) of the Louisiana Rules of Professional Conduct for assessing the reasonableness of attorney's fees, including the ultimate result obtained, the overwhelming responsibility incurred, the importance of the litigation, the amount of money invoiced, the nature and extent of the work

performed, the legal knowledge, attainment and skill of counsel, the number of appearances made in the case, and the intricacies of the facts involved in the complex litigation.

In its motion, ABS also sought to recover from James the amount of court costs, $33,973.16, plus the cost of depositions used at trial, $11,996.85, for a total cost award of $45,970.01. The request for deposition costs sets forth the deposition costs for 18 depositions, with the entry for Dr. Barry Christopher containing a notation of "Video/Trial Deposition Total."

In a supplemental and amending memorandum in support of its motion, ABS submitted its recorded contingency contract with its attorney. This contract gave ABS's attorney the right to recover 40% of the net recovery received in prosecuting the case. ABS noted that while a court may consider a contingency fee contract, it is not bound by such an agreement in determining reasonable attorney's fees.

In opposition to the motion, James asserted that La. R.S. 9:2784, pursuant to which attorney's fees were awarded to ABS in the underlying litigation, only permits the recovery of fees for the collection of amounts which a contractor receives from an owner for a subcontractor's work, but then fails to pay the subcontractor. James urged that ABS failed to meet its burden of proof with respect to establishing a reasonable fee for the limited portion of this case which could be subject to La. R.S. 9:2784, and for that reason, ABS's attorney's fee claim should be denied in its entirety. According to James, the vast majority of damages (if not all) ABS was awarded against James were not governed by La. R.S. 9:2784. James argued, alternatively, at most $39,000.00 of the amount awarded to ABS from James was within the scope of that statute, and ABS should be entitled to recover no more than a reasonable fee for the collection of $39,000.00, which

7

would be $15,600.00 based on the contingency fee agreement entered into between ABS and its attorney.

With respect to costs, James acknowledged that ABS was entitled to recover $33,973.16 paid to the clerk of court in this matter. Accordingly, that amount of ABS's cost request was not disputed. However, James contested the amount of the deposition costs sought by ABS, asserting that ABS failed to establish in its motion that most of the deposition transcripts for which it sought to recover costs were actually introduced and accepted into evidence. James urged that only the deposition of Dr. Barry Christopher, for which ABS sought to recover $2,653.50 from James, was introduced into evidence at trial, and therefore, ABS's request for costs should be reduced from $45,970.01 to a total of $36,626.66 ($33,973.16 for clerk costs and $2,653.50 for deposition costs.

At the hearing on the motion, ABS and James introduced considerable documentary evidence. ABS's evidence consisted of, among other things, a detailed chart of attorney/paralegal time and fees; a chart of the depositions taken with excerpts and a cost summary with supporting invoices; a chronological index of the appeal record; affidavits of attorneys attesting to the reasonableness of the fee rate sought by ABS; a register of costs from the 19th Judicial District Court; ABS's contingency fee contract; and numerous exhibits documenting court rulings and pleadings in the underlying litigation.

James's evidence consisted of numerous documents filed in connection with the underlying litigation, including excerpts of testimony adduced in the trial, as well as ABS's responses to James's discovery requests propounded in connection with the motion for attorney's fees and costs. An excerpt of the trial testimony revealed how ABS calculated its losses. ABS determined that its total cost on the job would have been $2,574,907.12, and added to that sum its net profits in the

8

amount of $1,135,029.12. From that total of $3,709,936.12, ABS subtracted the amount James paid them on the Project, $1,969,772.00, to arrive at a total loss of $1,740,164.12 as of August 9, 2005, when ABS left the Project. In addition to the excess costs and lost profits, ABS valued its loss of future business at $2,000,000.00. ABS asked for a total damage award in the amount of $3,174,160.00, which is the precise amount awarded to it by the jury for damages for James's breach of contract.[1]

The transcript further reveals that in response to questions regarding the amount of money ABS billed James at the time ABS left the Project, ABS's representative stated that there was a July invoice ABS billed James for in the amount of $39,000.00, but for which James did not pay. On further questioning regarding this payment, the witness admitted that James paid ABS 100% of the amount ABS billed James in connection with the Project, less retainage, totaling $1,969,772.00 at the time ABS left the Project. The witness acknowledged that James had not shorted ABS on any payments due ABS on the Project until the July invoice, which would have been due in August, after ABS demobilized from the Project.

In its discovery requests, including requests for admissions and interrogatories, James sought to have ABS identify the exact dollar amount awarded to ABS for different categories, including a claim for any amount within the contract price that ABS was not paid for work ABS performed on the Project. ABS was also asked to identify the attorney hours incurred in connection with such amounts. ABS objected to the discovery requests on the basis that the questions

---

[1]At the hearing on the motion for attorney's fees, ABS's attorney acknowledged that the amount awarded by the jury was less than the actual amount ABS had requested. In the appeal of the judgment in the underlying litigation, ABS urged that one way of looking at the verdict is that the jury awarded $2,065,171.00 in excess costs/lost profits; $39,878.00, the balance due on ABS's last invoice, and approximately $1,000,000.00 for business destruction, or one-half of the amount ABS requested for that item of damage.

were not reasonably calculated to lead to evidence that was admissible to determine the attorney's fees and cost motion. ABS also urged that James's attempt to obtain such information was an improper attempt to re-open and relitigate issues that had been conclusively established by the December 1, 2015 judgment, including the issue of what constitutes the amount and payment "due" under La. R.S. 9:2784. ABS argued that the December 1, 2015 judgment is now final and has *res judicata* effect, conclusively establishing that the amount and payment "due" to ABS under La. R.S. 9:2784 is $3,174,160.00. According to ABS, any attempt to claim that the amount or payment due to ABS under La. R.S. 9:2784 is anything other than $3,174,160.00 is an improper attempt to relitigate this issue and a direct attack on the court's final December 1, 2015 judgment.

During the hearing on the motion, ABS's lead counsel testified. The attorney admitted that there was no provision for attorney's fees in ABS's contract with James and that the exclusive source of any recovery for attorney's fees in this case is La. R.S. 9:2784. ABS's attorney was asked whether it was true that the only invoice ABS issued that was not paid by James was the final invoice in the amount of $39,000.00. This question was met with an objection that the "whole thing" is *res judicata*, and that the December 1, 2015 judgment definitively answered the question of the amount on which James owes attorney's fees to ABS. The trial court sustained the objection.

Regarding the cost request, ABS's attorney identified an exhibit setting forth a list of depositions totaling $11,996.85. According to the attorney, these depositions were used at trial, either as direct testimony or impeachment evidence. It was also revealed at the hearing, over ABS's objection, that ABS's insurer paid attorney's fees on behalf of ABS to defend against James's reconventional demand in the amount of $822,003.70 over the life of the case.

10

Following the hearing on the motion, the court determined that the attorney's fees requested by ABS in the amount of $3,216,943.75 were reasonable and just. The court credited the amount of attorney's fees that ABS's attorney received from ABS's insurer, $822,003.70, to the total award. The trial court signed a judgment on January 23, 2020, granting ABS's motion and ordering James to pay reasonable attorney's fees in the amount of $2,394,969.44 to ABS. James was also cast with costs in the amount of $45,970.01. The judgment further decreed that judicial interest on both awards was to run from the date of the judgment until paid.

James suspensively appealed the January 23, 2020 judgment, contesting the attorney's fee award and cost assessment against it. James designated portions of the trial court record for the purposes of the appeal. ABS answered the appeal. Therein, ABS challenged the credit/offset awarded to James for the amounts ABS's attorney received from ABS's insurer, and it sought an increase in the attorney's fee award to $3,216,943.75. ABS also sought a modification of the January 23, 2020 judgment insofar as it awarded judicial interest from the date of that judgment, urging that judicial interest should run on the attorney's fee and cost awards from December 15, 2015, the date of the final judgment in the underlying case.

## APPLICABLE LAW

It is well settled that attorney's fees are not due and owing a successful litigant unless specifically provided for by contract or by statute. **Silliman Private School Corporation v. Shareholder Group,** 2001-0964 (La. App. 1st Cir. 5/10/02), 819 So.2d 1088, 1091-92, <u>writ denied</u>, 2002-1501 (La. 9/20/02), 825 So.2d 1176. Statutes that provide for attorney's fees are strictly construed because an award of attorney's fees is exceptional and penal in nature. <u>Id</u> at 1092. In this

11

case, it is undisputed that the contract between James and ABS did not contain an attorney's fee provision. It is further undisputed that La. R.S. 9:2784 provides the exclusive basis for ABS's attorney's fee claim.

Louisiana Revised Statute 9:2784 is entitled "Late payment by contractors to subcontractors and suppliers; penalties." Paragraph A of La. R.S. 9:2784 requires a contractor to pay a subcontractor monies received from an owner of an immovable for the subcontractor's work on the immovable. It provides, in pertinent part:

> A. When a contractor receives any payment from the owner for improvements to an immovable...the contractor shall promptly pay such monies received to each subcontractor and supplier in proportion to the percentage of work completed prior to the issuance of the certificate of payment by such subcontractor and supplier... .

When a contractor, without reasonable cause, fails to make a payment to its subcontractor within 14 days of the receipt of payment from the owner, Paragraph C of La. R.S. 9:2784 requires the contractor to pay the subcontractor penalties in the amount of one-half of one percent of "the amount due" per day from the expiration of the prompt pay period after the receipt of payment from the owner, not to exceed 15% of the outstanding balance due. Paragraph C of La. R.S. 9:2784 also requires the contractor to pay the subcontractor "reasonable attorney fees for the collection of the payments due the subcontractor... ." Paragraph C provides:

> If the contractor...without reasonable cause fails to make any payment to his subcontractors and suppliers within fourteen consecutive days of the receipt of payment from the owner for improvements to an immovable, the contractor...shall pay to the subcontractors and suppliers, in addition to the payment, a penalty in the amount of one-half of one percent of the amount due, per day, from the expiration of the period allowed herein for payment after the receipt of payment from the owner. The total penalty shall not exceed fifteen percent of the outstanding balance due. In addition, the contractor...shall be liable for reasonable attorney fees for the collection of the payments due the subcontractors and suppliers. However, any claim which the court finds to be without merit shall

12

subject the claimant to all reasonable costs and attorney fees for the defense against such claim.

Paragraph A of La. R.S. 9:2784 gave ABS the right to recover any payments James received from DOTD for ABS's work on the Project, but failed to remit to ABS. Additionally, if James, without reasonable cause, failed to remit such payment to ABS within 14 days of its receipt of payment from DOTD, Paragraph C of La. R.S. 9:2784 authorized ABS to recover a penalty on the "amount due" and to recover "reasonable attorney fees for the collection of the payments due" to ABS.

It is undisputed that at the time ABS left the Project, all amounts invoiced by ABS under the subcontract for the Project had been paid by James, with the exception of one invoice for work ABS performed in July 2005, which became due after ABS left the Project in August 2005. This invoice totaled $39,000.00.

*Res Judicata and Law of the Case*

ABS contends that the December 1, 2015 judgment conclusively established the application of La. R.S. 9:2784 and the "amount due" under Paragraph C of that provision. ABS maintains that the jury awarded it a penalty of 5%, and the December 1, 2015 judgment awarded ABS penalties in the amount of $158,708.00, which is 5% of the jury's total damage award of $3,174,160.00, pursuant to La. R.S. 9:2784. On the appeal of the underlying litigation, this court permitted the penalty award to stand and the Louisiana Supreme Court denied writs. Thus, ABS contends, following the denial of writs by the Supreme Court, the December 1, 2015 judgment and conclusions therein acquired the effect of *res judicata*. ABS insists that the doctrine of *res judicata* prohibits relitigation of the conclusively established fact that $3,174,160.00 is the "amount due" under La. R.S. 9:2784C for the purpose of assessing reasonable attorney's fees, and argues that no court has jurisdiction to alter, revise, or modify this conclusively established fact. ABS maintains that the trial court did not abuse its discretion by applying the doctrine of

13

*res judicata* in this case and awarding it reasonable and just attorney's fees in the amount of $3,216,843.75, due to the complexity of the litigation, the astronomical amount of work involved, and the favorable result obtained by ABS in the underlying litigation.

*Res judicata*, which literally means "the thing adjudged," bars relitigation of a subject matter arising from the same transaction or occurrence of a previous suit. **Quality Environmental Processes, Inc. v. IP Petroleum Company, Inc.**, 2016-0230 (La. App. 1st Cir. 4/12/17), 219 So.3d 349, 364, writ denied, 2017-00915 (La. 10/9/17), 227 So.3d 833. The chief inquiry in examining the applicability of the doctrine is whether a second action asserts a cause of action that arises out of the transaction or occurrence that was the subject matter of the first action. At its core, application of the principle of *res judicata* envisions a second lawsuit. Id. at 365.

In this case, there is no second lawsuit; rather, there are judgments of the trial court and the appellate court within the same lawsuit. *Res judicata* simply is not a proper procedural vehicle for determining the relationship between prior judgments by a trial court and an appellate court rendered within the same lawsuit. See **Quality Environmental Process, Inc.**, 219 So.3d at 365-66.

ABS argues alternatively that even if the doctrine of *res judicata* is inapplicable in this case, the law of the case doctrine could apply, which would still bar re-opening the 2015 judgment. Under this doctrine, appellate courts generally refuse to reconsider their own rulings of law on a subsequent appeal of the same case. **Carr and Associates, Inc. v. Jones**, 2019-0550 (La. App. 1st Cir. 12/27/19), 292 So.3d 577, 582. The reasoning behind this doctrine is to avoid relitigation of the same issue, to promote consistence of result in the same litigation, and to promote efficiency and fairness to the parties by affording a single opportunity for argument and decision of the matter at issue. Generally, re-

14

argument in the same case of a previously decided point will be barred where there is simply doubt as to the correctness of the earlier ruling. **Quality Environmental Processes, Inc.,** 219 So.3d at 366. The law of the case doctrine is not an inflexible law by which appellate courts are absolutely bound; an appellate court may exercise discretion in application of the doctrine. Id.

ABS submits that the penalty portion of the 2015 judgment required a determination that $3,174,160.00 was the "amount due" for the purpose of La. R.S. 9:2784. However, according to ABS, James is attempting to relitigate this issue by arguing that it was palpable error for the court to conclude that the entirety of the $3,174,160.00 damage award is subject to La. R.S. 9:2784. ABS insists that if there was a palpable error that would cause a manifest injustice in the December 1, 2015 judgment, a majority of the judges on this court or the Louisiana Supreme Court would have detected the error and corrected it. Thus, ABS argues that James failed to show that such palpable error exists to attack the December 1, 2015 judgment, and the law of the case doctrine does not offer James the opportunity to relitigate a matter that was conclusively adjudicated in the December 1, 2015 final judgment.

We decline to apply the law of the case doctrine to the circumstances of this case. There was no adjudication in the December 1, 2015 judgment as to the amount of attorney's fees James owed ABS; the judgment merely decreed that James owed reasonable attorney's fees pursuant to La. R.S. 9:2784. Furthermore, there was no majority opinion in the appeal of the December 1, 2015 judgment decreeing that La. R.S. 9:2784 permitted an award of attorney's fees on the entire amount ABS was awarded for James's breach of contract. In fact, at least four of the eleven judges sitting *en banc* dissented from that portion of the *per curiam* opinion insofar as it allowed the award of penalties and attorney's fees assessed

15

against James to stand. Those judges agreed that La. R.S. 9:2784 did not apply to this case because the record demonstrated that ABS was paid all amounts due at the time it left the Project and because ABS did not bring its claim for the failure of James to remit payment received from DOTD for invoices from ABS for work done on the Project. **ABS Services, Inc.**, 269 So.3d at 758. Additionally, another judge who concurred in the *per curiam* opinion, wrote separately to express his opinion that La. R.S. 9:2784 was not applicable to ABS's claims for damages for delay and/or loss of profits/business, but may be applicable to the extent there was conflicting testimony as to whether ABS was paid all amounts due for invoices and pay applications at the time it left the Project. The concurring opinion noted that the jury could reasonably have believed the testimony of ABS's owner, Mr. Bertas, that the final invoice owed to ABS was not paid by James. Id. at 768. Three other judges dissented from the *per curiam* opinion after finding significant procedural errors that warranted a new trial on the issue of James's liability to ABS; none of these dissenting opinions specifically addressed La. R.S. 9:2784 or the award of attorney's fees. Id. at 770, 771. This court's *per curiam* opinion in no way definitively established that ABS is entitled to reasonable attorney's fees on the entire damage award, which included increased costs, lost profits, and loss of future business, all of which had no relation to any amounts James had been paid by DOTD for ABS's work on the Project.

For these reasons, we find that the trial court improperly applied the doctrine of *res judicata* to preclude James from demonstrating at the hearing to fix attorney's fees that the amount owed by James to ABS under La. R.S. 9:2784 is an amount other than the total amount of damages awarded by the jury in the underlying litigation. This legal error interdicted the attorney's fee award.

16

Therefore, we shall determine the issue of ABS's entitlement to attorney's fees under La. R.S. 9:2784 *de novo*.[2]

James argues that the trial court erred in awarding ABS attorney's fees for the collection of the entirety of the damages and all aspects of the litigation pursuant to La. R.S. 9:2784. We agree. Construing the language of La. R.S. 9:2784 in its entirety, we find its attorney's fee provision to be clear and unmistakable: A subcontractor is entitled to recover attorney's fees under La. R.S. 9:2784C for the collection of payments due the subcontractor under La. R.S. 9:2784A. Louisiana Revised Statute 9:2784A requires the contractor who receives payment from the owner of an immoveable to promptly pay such monies received to the subcontractor. Thus, in order to be entitled to recover attorney's fees under La. R.S. 9:2784C, ABS had to demonstrate that James failed to promptly pay it monies it received from DOTD for ABS's work on the Project.

ABS made no attempt at the attorney's fee hearing to demonstrate what portion of its damage award was in fact owed because of James's failure to pay ABS sums it received from DOTD for work ABS performed on the Project. Instead, ABS sought to recover attorney's fees incurred in connection with the entirety of its case, including prosecution of claims for damages against James that are clearly beyond the scope of La. R.S. 9:2784A, as well as ABS's claims against other defendants. Because ABS failed to demonstrate what amount awarded to it by the jury was subject to La. R.S. 9:2784 to permit a court to assess a reasonable attorney's fee on that amount, it would be proper to deny ABS any attorney's fee

---

[2]Ordinarily, a trial court has much discretion in fixing an award of attorney's fees and its award will not be disturbed on appeal in the absence of a showing of an abuse of discretion. **Thomas v. A. Wilbert & Sons, LLC**, 2015-0928 (La. App. 1st Cir. 2/10/17), 217 So.3d 368, 403. The applicability of La. R.S. 9:2784 to this case presents a legal issue, which this court reviews *de novo*. **Benjamin v. Zeichner**, 2012-1763 (La. 4/5/13), 113 So.3d 197, 201.

17

award. However, James admits that it failed to pay ABS a final invoice for work ABS did on the Project in the amount of $39,000.00. The evidence supports the conclusion that the most the jury could have awarded in damages to ABS pursuant to La. R.S. 9:2784A was $39,000.00. Thus, pursuant to La. R.S. 9:2784C, ABS is entitled to collect a reasonable attorney's fee for the collection of $39,000.00 from ABS. Considering that ABS had a contingency fee contract for 40% of the amount recovered, we modify the trial court's attorney fee award to award ABS attorney's fees in the amount of $15,600.00 under La. R.S. 9:2784C, representing 40% of the amount recoverable from James under La. R.S. 9:2784A.[3]

*Costs*

In its fourth assignment of error, James contends that the trial court erred in awarding ABS the totality of the requested costs. Specifically, James attacks the award of $11,996.85 in deposition costs, urging that ABS failed to demonstrate that the deposition transcripts for which it sought to recover costs were introduced into evidence during trial, with the exception of one video deposition for which ABS sought to recover $2,653.50.

Louisiana Code of Civil Procedure article 1920 provides that "[u]nless the judgment provides otherwise, costs shall be paid by the party cast...Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable." Louisiana Revised Statute 13:4533 permits a court to tax "the costs for taking depositions and copies of acts used on the trial" as costs. A trial court has great discretion in awarding

---

[3]Because of our resolution of this issue, we pretermit discussion of the second and third assignment of error raised by James regarding the award of paralegal fees and the unreasonableness of the attorney's fee award. Moreover, we note that while the trial court gave James a credit on the attorney's fee award, we decline to apply that credit to offset our modified $15,600.00 attorney's fee award. The credit was issued for attorney's fees paid by ABS's insurer on behalf of ABS in defending against James's reconventional demand. The attorney fees are wholly unrelated to the attorney's fees due ABS under the Prompt Pay Statute; therefore, James is not entitled to credit those attorney's fees to its obligation to pay attorney's fee pursuant to the Prompt Pay Statute.

18

costs, including expert witness fees, deposition costs, exhibit costs, and other related expenses. **Harris v. City of Baton Rouge**, 2016-0163 (La. App. 1st Cir. 12/22/16), 209 So.3d 405, 408, writ denied, 2017-00155 (La. 3/31/17), 217 So.3d 360.

James argues that to be considered "used at trial" for the purpose of La. R.S. 13:4533, a deposition must be introduced and accepted into evidence, citing two decisions of the 4th Circuit Court of Appeal. However, this court has previously held that depositions used for impeachment purposes are "used on the trial" for the purpose of La. R.S. 13:4533, and may be taxed as costs. **Gauthier v. Wilson**, 2004-2527 (La. App. 1st Cir. 11/4/05), 927 So.2d 383, 387, writ denied, 2005-2402 (La. 3/31/06), 925 So.2d 1258. ABS's attorney testified at the hearing on the motion to fix costs that the depositions it asked the court to tax as costs were used at trial, either as direct testimony or as impeachment evidence. Louisiana Code of Civil Procedure article 1920 confers upon the trial court the discretion to tax costs in an equitable manner. Therefore, under the facts presented, we find that the trial court did not abuse its discretion when it taxed costs for depositions that were used for impeachment at trial, and we affirm that portion of the judgment taxing costs in the amount of $45,970.01 to James.

## ANSWER TO THE APPEAL

ABS contends that the trial court erred by imposing legal interest from the date of the judgment awarding attorney's fees and costs, January 23, 2020, instead of imposing legal interest from the date of the December 1, 2015 final judgment on the merits. It asks this court to modify the judgment to reflect that legal interest is to run on all principal amounts of the January 23, 2020 judgment from December 15, 2015. We decline to do so. Louisiana Civil Code article 2000 states that "when the object of the performance is a sum of money, damages for delay in

19

performance are measured by the interest on that sum from the time it is due[.]" Attorney's fees could not have been considered to be "due" to ABS until there was a judgment determining the amount of the attorney's fees to which ABS was entitled; until that time, the amount of attorney's fees due to ABS for James's delay in performance was not ascertainable. See **Sharbono v. Steve Lang & Son Loggers**, 97-0110 (La. 7/1/97), 696 So.2d 1382, 1389 (holding that pre-judgment interest may not be calculated on an award of attorney's fees; rather, post-judgment interest on the amount of attorney's fees awarded may be calculated only from the date the debt came into being and thus became due until the date it is paid); **Delatte v. Pala Group, LLC**, 09-0913 (La. App. 1st Cir. 2/10/10), 35 So.2d 291, 301; **Williams v. Louisiana Indemnity Company**, 26,887 (La. App. 2nd Cir. 6/21/95) 658 So.2d 739, 745 (holding that judicial interest on an award of attorney's fees runs from the date they are awarded, as claims for such amounts remain unliquidated until the award is made). Accordingly, we affirm that portion of the judgment providing that interest on the attorney's fee award is to run from January 23, 2020, the date on which the trial court rendered judgment setting ABS's attorney fee award.

Lastly, ABS seeks an increase in attorney's fees to reflect the efforts of its attorney in connection with this appeal. An appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. La. C.C.P. art. 2164. As a general rule, an increase in attorney's fees is usually allowed where a party was awarded attorney's fees by the trial court and is forced to and successfully defends an appeal. **Bergeron v. Watkins**, 98-0717 (La. App. 1st Cir. 3/2/99), 32 So.2d 399, 405; **Quinlan v. Sugar-Gold**, 53,348 (La. App. 2nd Cir. 3/11/20), 293 So.3d 722, 729. It is within the appellate court's discretion to award or increase attorney's fees for appellate work. **Quinlan v. Suger-Gold**, 293 So.3d

at 729. Because ABS did not successfully defend its $2,394,940.05 attorney's fee award, we decline to award ABS additional attorney's fees for work performed by its attorney in this appeal.[4]

## CONCLUSION

For the foregoing reasons, the January 23, 2020 judgment is amended to award A.B.S Services, Inc. attorney's fees in the amount of $15,600.00. In all other respects, the judgment appealed from is affirmed. All costs of this appeal are assessed to A.B.S. Services, Inc.

**AMENDED IN PART AND AS AMENDED, AFFIRMED; ANSWER TO APPEAL DENIED.**

---

[4]ABS also challenged the trial court's finding that James was entitled to a credit/setoff of $822,003.70 for the amounts paid to ABS's attorney by ABS's insurance company. The hearing transcript reflects that this amount was paid to ABS's attorney for defending claims brought by James against ABS in James's reconventional demand. The issue of the propriety of this credit has been mooted by this court's modification of the attorney's fee award.

21